8

Andrew K. Alper (State Bar No. 088876)
aalper@frandzel.com
Gerrick M. Warrington (State Bar No. 294890)
gwarrington@frandzel.com
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard
Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
Facsimile: (323) 651-2577

Attorneys for Creditor TBK Bank, SSB, a Texas State Savings Bank

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>RDX, Inc.,<br><br>      Debtor. | CASE No. 17-12463<br><br>DC No. FRB-1<br><br>Chapter 7<br><br>**DECLARATION OF DIRK COPPLE IN SUPPORT OF TBK BANK, SSB'S MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date:    TBD<br>Time:    TBD<br>Place:   Courtroom 11 (Department A)<br>           2500 Tulare Street, 5th Floor<br>           Fresno, CA 93721<br>Judge:  Hon. Fredrick E. Clement |

I, Dirk Copple, declare as follows:

     1.    I am employed as Executive Vice President at Triumph Commercial Finance, a division of TBK Bank, SSB, a Texas State Savings Bank ("TBK"). I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

     2.    TBK Bank, SSB was formerly known as Triumph Savings Bank, SSB. On October 1, 2015, Triumph Savings Bank, SSB changed its name to TBK Bank, SSB, a Texas State Savings Bank. Attached as Exhibit 1 to the separately-filed appendix of exhibits related to this declaration

2592806.1 | 101026-0002          1

("Appendix of Exhibits") is a true and correct copy of the document entitled Amendment to Appointment of Statutory Agent, which reflects the name change. This document was filed with the Office of the Secretary of State of Texas on December 8, 2015.

3. I am one of the persons at TBK in charge of monitoring and collecting delinquent and problem accounts at TBK. I am one of the persons at TBK charged with responsibility for the collection of the obligation of accounts which involve RDX, Inc. ("Debtor"). My responsibilities include supervision and control over certain of TBK employees and I am familiar with the bookkeeping procedures of TBK. I am required to know and, in fact, am very familiar with the jobs of TBK employees and the methods they use in making bookkeeping entries and maintaining other records for which I am ultimately responsible.

**AUTHENTICATION OF DOCUMENTS**

4. I am one of the custodians of TBK records as they pertain to the loans defined below and related documents with Debtor. I have personally worked with and on TBK records and have personal knowledge that the records were and are kept in the usual and ordinary course of TBK's business and that the entries therein are made at or about the time of the events recorded by individuals employed by TBK who have and had personal knowledge thereof and who have and had a continuing business duty to make those entries and record those events at or about the time of the events recorded. In particular, the following sets forth the procedures used by TBK when it handles records and/or information regarding its loans and how I have become one of TBK custodians of records.

a. <u>Original Documents</u>: Once original loan documents evidencing the transactions between TBK and its borrowers and with respect to guaranties, security agreements and other such documents (collectively, "loan documents") are executed, which original loan documents are part of TBK records, they are delivered to employees of TBK whose duty it is to receive the executed original loan documents and safeguard them. The original loan documents are safeguarded by making copies of them, placing the copies in TBK file associated with the lease to a particular borrower and placing the originals of the loan documents in a separate documentation file. The separate documentation file containing the original loan documents is

placed in a locked fireproof safe.  Original loan documents are not removed from the secured location except under the supervision of an employee of TBK who is authorized to do so and they are immediately put back in the fireproof location.

    b. <u>Records Other Than Original Documents</u>:  TBK also keeps a separate file with respect to records that are not original documents. This file typically will contain documents other than the copies of the original loan documents, such as documents received from any guarantors including correspondence, communications, and other documents generated by TBK in the process of handling the transactions.  These records and documents are put in the file by employees of TBK whose duty it is to file and/or generate such records and documents for the file at or about the time the records and documents are received or the information is generated and recorded and to maintain such records in the credit file.  These records and documents are available to members and employees of TBK working on the file, but will only be used by members or employees of TBK who have a business need to have the file or to look at the records and/or information therein.  If a record or document is ever removed from the file, it is replaced as soon as the task is completed that led to the file being taken out, and the file then returned to its original location.

    c. <u>Payment History</u>:  TBK maintains detailed and comprehensive computerized records of all financial transactions between it and its borrower and any guarantors. Employees of TBK input data into TBK computer system reflecting the loan, payments and other financial transactions, which computer system is designed to record such information, and payments for each particular transaction.  TBK's computer system also tracks whether the transaction is current and other related information.  Only a limited number of designated members and employees of TBK are authorized by TBK to enter the data.  Data entry and data changes require the concurrence of a supervisor who is one of TBK officers.  Whenever a payment is received on a transaction, that payment is input within 24 hours of the date and time it is received into TBK computer system by persons authorized, and who have a business duty to TBK, to do so in their ordinary course of business.

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

5. <u>Trustworthiness</u>: The foregoing methods have proven to be an accurate and trustworthy means for TBK maintaining records and recording information about TBK loans and its lessees, borrowers, guarantors, and other customers. These records are utilized by members and employees of TBK, including me, on a daily basis in the discharge of the normal and ordinary functions of TBK and its employees, and such records regularly are relied upon and are an accurate and proven means of reflecting the current situation with regard to each borrower and any guarantor.

## BACKGROUND

6. On March 21, 2016, TBK made a loan to the Debtor and the Debtor's principal, Navdeep Kaur Singh ("N. Singh"), evidenced by a Loan And Security Agreement ("LSA 1"), in the amount of $1,987,336.71. A true and correct copy of LSA 1 is attached to the Appendix of Exhibits as Exhibit 2.

7. Pursuant to the terms of LSA 1, the Debtor and N. Singh were required to make 36 monthly payments of $60,954.06 each, commencing on June 1, 2016, and continuing thereafter on the first day of each following month ("Loan 1").

8. In addition, pursuant to the terms of LSA 1, TBK was granted a security interest in 63 trailer-trucks and 15 trailers listed in Schedule A attached to LSA 1 ("LSA 1 Vehicles").

9. TBK noted its lien on the certificates of title for each of these LSA 1 Vehicles. Attached as Exhibit 3 to the Appendix of Exhibits are true and correct copies of the certificates of title to the LSA 1 Vehicles. TBK was also granted a blanket lien on all personal property assets of both the Debtor and N. Singh described as all accounts, general intangibles, accounts receivable, chattel paper, electronic chattel paper, collateral, contract rights, documents, equipment, fixtures, goods, instruments, inventory, securities, deposit accounts, investment property, and all other property of every kind and all proceeds therefrom as is more fully defined in paragraph 6 of the LSA 1 ("Other Collateral").

10. After the execution of LSA 1, on or about February 23, 2007, TBK, the Debtor, and N. Singh entered into an Extension to LSA 1 ("Extension"). Attached as Exhibit 4 to the Appendix of Exhibits is a true and correct copy of the Extension.

11.	Pursuant to the Extension, among other things, the Debtor and N. Singh agreed to pay the unpaid balance due on LSA 1 in thirty-one (31) consecutive monthly installments of $61,636.47 each, commencing on April 1, 2017, and a final installment in the amount of the unpaid principal balance plus all accrued and unpaid interest in the amounts due and owing under the terms of LSA 1.

12.	On June 24, 2016, TBK made a second loan to the Debtor pursuant to the Loan and Security Agreement ("LSA 2"), a true and correct copy of which is attached as Exhibit 5 to the Appendix of Exhibits.

13.	Pursuant to the terms of LSA 2, the Debtor was to make 60 monthly installments of $11,549.10 each, commencing on September 5, 2016, and one installment payment of $142,222.56 ("Loan 2").

14.	Pursuant to the terms of LSA 2, TBK was granted a security interest in the personal property set forth in Schedule A to LSA 2 ("LSA 2 Vehicles"), which consists of five trailer-trucks.

15.	TBK noted its lien on the certificates of title for each of these LSA 2 Vehicles. Attached as Exhibit 6 to the Appendix of Exhibits are true and correct copies of the certificates of title to the LSA 2 Vehicles. TBK was, once again, granted a blanket lien on the Other Collateral.

16.	The LSA 1 Vehicles and LSA 2 Vehicles are collectively referred to herein as the "Trucks."

17.	The Debtor defaulted under Loan 2 by failing to make the monthly payment due for June 2017. In addition, the Debtor and N. Singh's default on LSA 1 constitutes an event of default under the terms of LSA 2. Demand was made on the Debtor to make all payments due, but the Debtor failed and refused to do so.

18.	In addition, the five trucks collateralizing LSA 2 have been uninsured for quite some time, but the Debtor represented to TBK the five trucks were insured. Moreover, at the inception of the loan, relative to LSA 1, the Debtor represented to TBK that the 63 trucks and trailers were insured; however, this purported insurance was phony and never existed. True and correct copies of documents received from the insurance company with respect to the insurance

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

1 issues are attached as Exhibit 10 to the Appendix of Exhibits. There is insurance for some of the
2 Trucks at this time, but it will be expiring on July 2, 2017.

3　　　　19.　　In addition to the foregoing, the Debtor has stripped, cannibalized, and left the
4 Trucks with huge repair bills. True and correct copies of some of the repair bills (*i.e.*, the ones that
5 TBK knows about) reflecting necessary repairs totaling $67,017.00 are attached as Exhibits 8 and
6 9 to the Appendix of Exhibits.

7　　　　20.　　The most egregious conduct is what the Debtor and its principals have done to the
8 five trucks securing LSA 2. About 60 days ago, these Trucks were inspected by TBK and were in
9 immaculate condition—showroom ready. But only sixty days later, when these Trucks were
10 repossessed, it was obvious that the new tires had been replaced by old tires and new equipment
11 was replaced with used equipment. It was apparent that the trucks had been cannibalized, and
12 TBK is now left with the huge repair bill for $35,820.00 for those trucks. As a result of this
13 conduct, TBK declared the unpaid balance of the Loans due and payable.

14　　　　21.　　On June 27, 2017 ("Petition Date"), the Debtor filed a voluntary chapter 7
15 bankruptcy case. The Debtor listed the Trucks on Schedule A/B, with an "unknown" value.
16 Attached as Exhibit 7 to the Appendix of Exhibits is a true and correct copy of relevant portion of
17 the Debtor's Schedules reflecting the Debtor's valuation of its collateral and the acknowledgement
18 of the lien of TBK; however, these Schedules lack substantial information.

### VALUATION OF THE TRUCKS

20　　　　22.　　I have been in the construction and equipment lending business for 27 years and
21 have repossessed similar types of collateral and equipment over my years at TBK. I have
22 discussed the Trucks with vendors, remarketers, and auctioneers, and I have checked certain
23 websites I am familiar with to determine the value of the Trucks. I have checked TruckPaper.com
24 and other internet remarketing sites.

25　　　　23.　　Loan 1 is secured by LSA 1 Vehicles, which consists of 63 trailer-trucks and 15
26 trailers. The list of trailer-trucks and trailers is attached as Schedule A to the LSA 1, which itself
27 is attached as Exhibit 2 to the Appendix of Exhibits.

28

24.　　　Loan 2 is secured by LSA 2 Vehicles, which consists of five trailer-trucks. The list of trailer-trucks and trailers is attached as Schedule A to the LSA 2, which itself is attached as Exhibit 5 to the Appendix of Exhibits.

25.　　　The total liquidation value of the LSA 1 Vehicles is $1,000,000.00, assuming no further damage to them. This amount is based upon my experience and expertise, as well as my discussions with vendors, remarketers, and auctioneers concerning these Trucks and my review of certain remarketing websites. This valuation takes into account certain reductions, including a 10% reduction for transport and make-ready costs as well as a 10% reduction for commissions and auction fees. In addition, I obtained a repair bill totaling $31,197.00 concerning eight of the LSA 1 Vehicles, which is discussed above.

26.　　　The total liquidation value of the LSA 2 Vehicles is $400,000.00, assuming no other damage. This amount is based upon my experience and expertise, as well as my discussions with vendors, remarketers, and auctioneers concerning these Trucks and my review of certain remarketing websites. This valuation takes into account certain reductions, including a 10% reduction for transport and make-ready costs as well as a 10% reduction for commissions and auction fees. In addition, I obtained a repair bill totaling $35,820.00 concerning all five of the LSA 2 Vehicles.

**AMOUNTS OWED**

27.　　　TBK holds two separate claims against the Debtor, one for each loan. As of June 23, 2017, the amount owed by the Debtor to TBK for Loan 1 is an amount not less than $1,595,989.96, which includes $1,537,848.44 in principal, $33,657.56 in interest, and $24,483.96 in late charges.

28.　　　As of June 23, 2017, the amount owed by the Debtor to TBK for Loan 2 is an amount not less than $694,704.66, which includes $639,156.52 in principal, $4,351.09 in interest, and $51,197.05 in late charges.

29.　　　Attached hereto, marked Exhibits 11 and 12 are the loan histories reflecting the payments made and the amount due on Loan 1 and 2, respectively. These payment histories and calculations are made and contained in TBK's computer system, and any payments received

are customarily entered within 24 hours of the date received unless received on a non-banking day and then they will be input as being received on the next banking day. All such entries are made in the ordinary course of TBK's business at or near the time of the event they occurred by persons with a business duty to TBK to make such entries in these records. These records are reliable and trustworthy and at no time has the Debtor ever disputed any of these records.

    I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

    Executed on this __30__ day of __June__, 2017, at Dallas, Texas.

    _____
    DIRK COPPLE

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000