

A. NEW OWNER'S *LAST NAME* (OR) COMPANY NAME     *FIRST*

B. NEW OWNER'S ADDRESS     APT NUMBER     C. ODOMETER READING (NO TENTHS)

D. CITY     STATE     ZIP CODE     E. DATE OF SALE OR LEASE RETURN     MO     DAY     YR

F. SELLER'S OR LESSEE'S *LAST NAME* (OR) COMPANY NAME     *FIRST*     G. SELLING PRICE (NO CENTS)     WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS     APT NUMBER     I. SELLER'S OR LESSEE'S SIGNATURE     X

J. CITY     STATE     ZIP CODE

VEHICLE ID NUMBER     YR MODEL     MAKE     PLATE NUMBER

1P9CP4320EB343969          2014 PRATT     4ND3062

REG 138A (REV. 10/2012)

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

614160801A2          VEHICLE HISTORY

**TRAILER**     YR MODEL   MAKE     PLATE NUMBER

VEHICLE ID NUMBER

1P9CP4320EB343969          2014 PRATT     4ND3062

BODY TYPE MODEL     AX   UNLADEN WEIGHT   FUEL   TRANSFER DATE   FEES PAID     REGISTRATION EXPIRATION DATE

VARIED          2 07950 0          $27

YR 1ST SOLD     CLASS     YR     MO     EQUIPMT/TRUST NUMBER     ISSUE DATE

EJ     2013     XV          08/01/16

MOTORCYCLE ENGINE NUMBER          ODOMETER DATE     ODOMETER READING

REGISTERED OWNER(S)

RDX INC ✓
2436 SARAH ST
FRESNO CA 93706

-----

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a ___ DATE ___ X _____ SIGNATURE OF REGISTERED OWNER

1b ___ DATE ___ X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |___|___|___|___|___|___| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is **not** the actual mileage.   ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE   TRANSFEROR/SELLER SIGNATURE(S)   X          DATE   TRANSFEREE/BUYER SIGNATURE(S)   X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY          PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB ✓
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date

CA167443332

022085     REG. 17 30RS (REV.02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

97

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME    FIRST

B. NEW OWNER'S ADDRESS    APT NUMBER    C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE    E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST    G. SELLING PRICE (NO CENTS)   WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER    I. SELLER'S OR LESSEE'S SIGNATURE

J. CITY    STATE    ZIP CODE    X

VEHICLE ID NUMBER     YR MODEL   MAKE     PLATE NUMBER

**1P9CP4320EB343972**     **2014 PRATT**     **4ND3064**

---

## STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

**614160801A2**

VEHICLE HISTORY

**TRAILER**

VEHICLE ID NUMBER    YR MODEL   MAKE    PLATE NUMBER

**1P9CP4320EB343972**    **2014 PRATT**    **4ND3064**

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| **VARIED** | 2 | 07950 | 0 | | *27 | |

| | YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | | **EJ** | **2013** | **XV** | | **08/01/16** |

MOTORCYCLE ENGINE NUMBER      ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ X _____
    DATE           SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE           SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE _____ TRANSFEROR/SELLER SIGNATURE(S)    DATE _____ TRANSFEROR/SELLER SIGNATURE(S)
X _____    X _____
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY    PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

**CA167443336**

022089    REG. 17 30RS (REV 02/2016)

VOID WITHOUT BEAR WATERMARK, HOLD TO LIGHT TO VIEW

KEEP IN A SAFE PLACE - VOID IF ALTERED

98



A. NEW OWNER'S LAST NAME (OR) COMPANY NAME    FIRST

B. NEW OWNER'S ADDRESS    APT. NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE

E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST

G. SELLING PRICE (NO CENTS)
WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT. NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE

X

J. CITY    STATE    ZIP CODE

VEHICLE ID NUMBER       YR. MODEL   MAKE      PLATE NUMBER

1P9CP4321EB343978      2014 PRATT    4ND3065

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

61416080lA2

**TRAILER**

VEHICLE ID NUMBER       YR MODEL   MAKE      PLATE NUMBER

1P9CP4321EB343978      2014 PRATT    4ND3065

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| VARIED | 2 | 07950 | 0 | | #27 | |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | EJ | 2013 | XV | | 08/01/16 |

MOTORCYCLE ENGINE NUMBER      ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)
RDX INC ✓
2436 SARAH ST
FRESNO CA 93706

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a    DATE    X      SIGNATURE OF REGISTERED OWNER

1b    DATE    X      SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ____ | ____ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING**   ☐ Odometer reading is not the actual mileage.   ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY    PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB ✓
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date

CA167443341

022094

REG. 17 30RS (REV. 4/2016)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

**KEEP IN A SAFE PLACE - VOID IF ALTERED**



A. NEW OWNER'S LAST NAME (OR) COMPANY NAME    FIRST

B. NEW OWNER'S ADDRESS    APT NUMBER    C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE    E. DATE OF SALE OR LEASE RETURN   MO   DAY   YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME   FIRST    G. SELLING PRICE (NO CENTS)   WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER    I. SELLER'S OR LESSEE'S SIGNATURE   X

J. CITY    STATE    ZIP CODE

VEHICLE ID NUMBER    YR. MODEL   MAKE    P. ATE NUMBER

1P9CP4322EB343973     2014 PRATT     4ND3067

REG 138A (REV. 10/2012)

---

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

**61416080 1A2**

**TRAILER**

VEHICLE ID NUMBER    YR MODEL   MAKE    PLATE NUMBER

**1P9CP4322EB343973**     **2014 PRATT**     **4ND3067**

BODY TYPE MODEL    AX   UNLADEN WEIGHT   FUEL   TRANSFER DATE    FEES PAID    REGISTRATION EXPIRATION DATE

**VARIED**    **2 07950 0**     **$27**

YR 1ST SOLD   CLASS   *YR    MO    EQUIPMT/TRUST NUMBER    ISSUE DATE

**EJ 2013 XV**     **08/01/16**

MOTORCYCLE ENGINE NUMBER    ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)   ✓

**RDX INC**
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. X _____
DATE        SIGNATURE OF REGISTERED OWNER

1b. X _____
DATE        SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads ⌷⌷⌷⌷⌷⌷ (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage ☐ Mileage exceeds the odometer mechanical limits.

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

DATE    TRANSFEROR/SELLER SIGNATURE(S)    X      DATE    TRANSFEREE/BUYER SIGNATURE(S)   X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY      PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB**   ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date

**CA167443335**

022088    REG. 17.30RS (REV.02/2016)

KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME    FIRST

B. NEW OWNER'S ADDRESS    APT NUMBER    C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE    E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST    G. SELLING PRICE (NO CENTS) WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER    I. SELLER'S OR LESSEE'S SIGNATURE

J. CITY    STATE    ZIP CODE    X

VEHICLE ID NUMBER    YR MODEL / MAKE    PLATE NUMBER

**1P9CP4323EB343965**    **2014 PRATT**    **4ND3066**

REG 13HA (REV. 10/2012)

---

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

**614160801A2**

VEHICLE HISTORY

**TRAILER**

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| **1P9CP4323EB343965** | **2014** | **PRATT** | **4ND3066** |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| **VARIED** | **2** | **07950** | **0** | | **$27** | |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| **EJ** | **2013** | **XV** | | | **08/01/16** |

MOTORCYCLE ENGINE NUMBER    ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a   X
DATE    SIGNATURE OF REGISTERED OWNER

1b   X
DATE    SIGNATURE OF REGISTERED OWNER

Federal and state law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [   |   |   ,   |   |   ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING   ☐ Odometer reading is not the actual mileage.   ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| | PRINTED NAME OF SELLER / AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

**CA167443328**

022081    REG. 17.30RS (REV. 02/2016)

KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK, HOLD TO LIGHT TO VIEW.

102

A. NEW OWNER'S LAST NAME R vB COMPANY NAME | FIRST

B. NEW OWNER'S ADDRESS | APT NUMBER | C. ODOMETER READING (NO TENTHS)

D. CITY | STATE | ZIP CODE | E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME | FIRST | G. SELLING PRICE (NO CENTS) WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS | APT NUMBER | I. SELLER'S OR LESSEE'S SIGNATURE
X

J. CITY | STATE | ZIP CODE

VEHICLE ID NUMBER | YR. MODEL | MAKE | PLATE NUMBER

**1P9CP4324EB343974** | **2014 PRATT** | **4ND3071**



# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

**614160801A2**

**TRAILER**

VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER
**1P9CP4324EB343974** | **2014 PRATT** | **4ND3071**

BODY TYPE MODEL | AX WEIGHT | UNL. DEN FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE
**VARIED** | **2 07950 0** | | | **$27**

YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE
**EJ 2013 XV** | | | | | **08/01/16**

MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING

REGISTERED OWNER(S)
**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

-----

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. X _____
    DATE          SIGNATURE OF REGISTERED OWNER

1b. X _____
    DATE          SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ | | | | | ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE | BUYER(S)/SELLER SIGNATURES | DATE | TRANSFEREE(S)/BUYER SIGNATURE(S)
     | X                         |      | X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

**CA167443337**

022090    REG. 17 30RS (REV.02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

103

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME | FIRST

B. NEW OWNER'S ADDRESS | APT NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY | STATE | ZIP CODE

E. DATE OF SALE OR LEASE RETURN | MO | DAY | YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME | FIRST

G. SELLING PRICE (NO CENTS) | WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS | APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE
X

J. CITY | STATE | ZIP CODE

VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER

**1P9CP4325EB343966**     **2014 PRATT**     **4ND3079**

REG 138A (REV 10/2012)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

**614160801A2**

**TRAILER**

VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER
**1P9CP4325EB343966** | **2014** | **PRATT** | **4ND3079**

BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE
**VARIED** | **2** | **07950** | **0** | | **$27** |

YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE
**EJ** | **2013** | **XV** | | **08/01/16**

MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

-----

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
    DATE               SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE               SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

The odometer now reads |__|__|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S)
   X            X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2 X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

**CA167443329**

022082     REG. 17.30RS (REV 02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

104

A NEW OWNER'S LAST NAME (OR) COMPANY NAME

FIRST

APT NUMBER

C. ODOMETER READING (NO TENTHS)

B. NEW OWNER'S ADDRESS

D. CITY        STATE    ZIP CODE

E. DATE OF SALE OR LEASE RETURN
MO    DAY    YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME        FIRST

G. SELLING PRICE (NO CENTS)
WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS

APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE

X

J. CITY        STATE    ZIP CODE

VEHICLE ID NUMBER

YR. MODEL    MAKE

PLATE NUMBER

**1P9CP4326EB343975**        **2014 PRATT**        **4ND3072**

REG. 138A (REV. 10/2012)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

**614160801A2**

**TRAILER**
VEHICLE ID NUMBER
**1P9CP4326EB343975**

YR MODEL    MAKE
**2014 PRATT**

PLATE NUMBER
**4ND3072**
REGISTRATION EXPIRATION DATE

BODY TYPE MODEL
**VARIED**

AX    UNLADEN WEIGHT
**2  07950 0**

FUEL    TRANSFER DATE

FEES PAID
**$27**

EQUIPMT/TRUST NUMBER

ISSUE DATE
**08/01/16**

YR 1ST SOLD

CLASS    YR    MO
**EJ  2013    XV**

ODOMETER DATE

ODOMETER READING

MOTORCYCLE ENGINE NUMBER

REGISTERED OWNER(S)
**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

-----

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a _____  X _____
   DATE            SIGNATURE OF REGISTERED OWNER

1b _____  X _____
   DATE            SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ][ ][ ][ ][ ][ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING   ☐ Odometer reading is not the actual mileage   ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE    TRANSFEROR/SELLER SIGNATURE(S)        DATE    TRANSFEREE/BUYER SIGNATURE(S)
        X                                            X
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY        PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT — READ CAREFULLY
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

Release Date _____

**CA167443338**

**022091**        REG 17.30RS (REV 02/2016)

KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

105

A. NEW OWNER'S LAST NAME ( ) COMPANY NAME     FIRST

B. NEW OWNER'S ADDRESS     APT NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY    STATE    ZIP CODE

E. DATE OF SALE OR LEASE RETURN    MO   DAY   YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST

G. SELLING PRICE (NO CENTS)    WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS    APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE    X

J. CITY    STATE    ZIP CODE

| VEHICLE ID NUMBER | YR MODEL MAKE | PLATE NUMBER |
|---|---|---|
| 1P9CP4327EB343967 | 2014 PRATT | 4ND3078 |

REG 138A (REV. 10/2012)

---

## STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

**614160801A2**

**TRAILER**

| VEHICLE ID NUMBER | | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|---|
| 1P9CP4327EB343967 | UNLADEN WEIGHT | | 2014 | PRATT | 4ND3078 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| VARIED | 2 | 07950 | 0 | | *27 | |

| | YR 1ST SOLD | CLASS | *YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | EJ | | 2013 | XV | | 08/01/16 |

MOTORCYCLE ENGINE NUMBER     ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)

RDX INC /
2436 SARAH ST
FRESNO CA 93706

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

1b. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ][ ][ ][ ][ ][ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB ✓
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

CA167443330

022083    REG. 17 30RS (REV 02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

106

A NEW OWNER'S LAST NAME (OR) COMPANY NAME        FIRST

B NEW OWNER'S ADDRESS        APT NUMBER        C ODOMETER READING (NO TENTHS)

D CITY        STATE        ZIP CODE        E DATE OF SALE OR LEASE RETURN
                                                                                                    MO        DAY        YR

F SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME        FIRST        G SELLING PRICE (NO CENTS)
                                                                                                    WHOLE DOLLARS

H SELLER'S OR LESSEE'S ADDRESS        APT NUMBER        I SELLER'S OR LESSEE'S SIGNATURE
                                                                                                    X

J CITY        STATE        ZIP CODE

VEHICLE ID NUMBER        YR MODEL        MAKE        PLATE NUMBER

**1P9CP4327EB343970        2014 PRATT        4ND3077**

REG 144 (REV 10/2015)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE        VEHICLE HISTORY

**614160801A2**

TRAILER

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| **1P9CP4327EB343970** | | **2014** | **PRATT** | **4ND3077** |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| **VARIED** | **2** | **07950** | **0** | | **#27** | |

| YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|
| | **EJ** | **2013** | **XV** | | **08/01/16** |

MOTORCYCLE ENGINE NUMBER        ODOMETER DATE        ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
    DATE        SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE        SIGNATURE OF REGISTERED OWNER

Federal and state law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [    |    |    |    ].[   ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage ☐ Mileage exceeds the odometer mechanical limits.

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

DATE        TRANSFEROR/SELLER SIGNATURE(S)        DATE        TRANSFEREE/BUYER SIGNATURE(S)
        X                                X

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY        PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)
   Release Date _____

**CA167443333**

**022086**        REG. 17 30RS (REV.02/2016)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

107

A. NEW OWNER'S (OR) NAME (OR) COMPANY NAME

B. NEW OWNER'S ADDRESS     APT NUMBER

C. ODOMETER READING (NO TENTHS)

D. CITY     STATE    ZIP CODE

E. DATE OF SALE OR LEASE RETURN

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME    FIRST

G. SELLING PRICE (NO CENTS) WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS     APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE

X

J. CITY     STATE    ZIP CODE

| VEHICLE ID NUMBER | YR MODEL MAKE | PLATE NUMBER |
|---|---|---|
| 1P9CP4328EB343976 | 2014 PRATT | 4ND3073 |

REG 138A (REV 10/2012)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

614160801A2

**TRAILER**

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| 1P9CP4328EB343976 | 2014 | PRATT | 4ND3073 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| VARIED | 2 | 07950 | 0 | | #27 | |

| | YR 1ST SOLD | CLASS | YR | MO | EQUPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | | EJ | 2013 | XV | | 08/01/16 |

MOTORCYCLE ENGINE NUMBER    ODOMETER DATE    ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

1b. _____ DATE _____ X _____ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ | | | | | | ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY    PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

**IMPORTANT READ CAREFULLY**

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
Signature releases interest in vehicle (Company names must be countersigned)

Release Date _____

**CA167443339**

022092    REG. 17 30RS (REV 02/2016)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

KEEP IN A SAFE PLACE - VOID IF ALTERED

108

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME | FIRST
B. NEW OWNER'S ADDRESS | APT NUMBER | C. ODOMETER READING (NO TENTHS)
D. CITY | STATE | ZIP CODE | E. DATE OF SALE OR LEASE RETURN MO DAY
F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME | FIRST | G. SELLING PRICE (NO CENTS) WHOLE DOLLARS
H. SELLER'S OR LESSEE'S ADDRESS | APT NUMBER | I. SELLER'S OR LESSEE'S SIGNATURE  X
J. CITY | STATE | ZIP CODE

VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER

**1P9CP4329EB343968          2014 PRATT          4ND3076**

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

**614160801A2**

**TRAILER**

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| **1P9CP4329EB343968** | | **2014** | **PRATT** | **4ND3076** |

BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE
**VARIED** | **2** | **07950 0** | | | **#27** |

YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE
| **EJ** | **2013** | **XV** | | **08/01/16**

MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING

REGISTERED OWNER(S)
**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. ___ DATE ___ X ___ SIGNATURE OF REGISTERED OWNER

1b. ___ DATE ___ X ___ SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ][ ][ ][ ][ ][ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S)
| X | | X
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY
Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X ___
Signature releases interest in vehicle (Company names must be countersigned)
Release Date ___

**CA167443331**

**022084**          REG. 17 30RS (REV.02/2016)

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

KEEP IN A SAFE PLACE - VOID IF ALTERED

109

| A. NEW OWNER'S *LAST NAME* (OR) COMPANY NAME | | | | *FIRST* | | C. ODOMETER READING (NO TENTHS) |
| B. NEW OWNER'S ADDRESS | | | | APT. NUMBER | | |
| D. CITY | | STATE | ZIP CODE | | | E. DATE OF SALE OR LEASE RETURN |
| | | | | | | MO  DAY  YR |
| F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME | | | | *FIRST* | | G. SELLING PRICE (NO CENTS) |
| | | | | | | WHOLE DOLLARS |
| H. SELLER'S OR LESSEE'S ADDRESS | | | | APT. NUMBER | | I. SELLER'S OR LESSEE'S SIGNATURE |
| | | | | | | X |
| J. CITY | | STATE | ZIP CODE | | | |

VEHICLE ID NUMBER                    YR  MODEL  MAKE              PLATE NUMBER

**1P9CP4329EB343971**              **2014 PRATT**        **4ND3074**

REG. 138A (REV. 10/2013)

---

## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

VEHICLE HISTORY

**61416080142**

**TRAILER**

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| **1P9CP4329EB343971** | | **2014** | **PRATT** | **4ND3074** |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| **VARIED** | **2** | **07950 0** | | | **#27** | |

| | YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | | **EJ** | **2013** | **XV** | | **08/01/16** |

MOTORCYCLE ENGINE NUMBER              ODOMETER DATE    ODOMETER READING

- - - - -

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
       DATE              SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
       DATE              SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ | | | | | | ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is **not** the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT · READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

**CA167443334**

**022087**          REG. 17.30RS (REV 02/2016)

**KEEP IN A SAFE PLACE · VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

| 10

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME　　FIRST

B. NEW OWNER'S ADDRESS　　　　　　　　APT NUMBER

C. ODO METER READING (NO TENTHS)

D. CITY　　　　　STATE　　ZIP CODE

E. DATE OF SALE OR LEASE RETURN
MO　　DAY　　YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME　　FIRST

G. SELLING PRICE (NO CENTS)
WHOLE DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS　　　　　APT NUMBER

I. SELLER'S OR LESSEE'S SIGNATURE
X

J. CITY　　　　　STATE　　ZIP CODE

VEHICLE ID NUMBER　　　　　　YR MODEL　MAKE　　PLATE NUMBER

**1P9CP432XEB343977　　2014 PRATT　　4ND3075**

---

## STATE OF CALIFORNIA

# CERTIFICATE OF TITLE

VEHICLE HISTORY

**61416080142**

**TRAILER**

VEHICLE ID NUMBER　　　　　YR MODEL　MAKE　　PLATE NUMBER

**1P9CP432XEB343977**　　**2014 PRATT**　**4ND3075**

BODY TYPE MODEL　AX　UNLADEN WEIGHT　FUEL　TRANSFER DATE　FEES PAID

REGISTRATION EXPIRATION DATE

**VARIED**　　**2 07950 0**　　　　**$27**

YR 1ST SOLD　CLASS　YR　MO　EQUIPMT/TRUST NUMBER　ISSUE DATE

**EJ 2013 XV**　　　　　　**08/01/16**

MOTORCYCLE ENGINE NUMBER　　ODOMETER DATE　ODOMETER READING

REGISTERED OWNER(S)

**RDX INC** ✓
**2436 SARAH ST**
**FRESNO CA 93706**

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a ___ X ___
DATE　　　　　　　　　　SIGNATURE OF REGISTERED OWNER

1b ___ X ___
DATE　　　　　　　　　　SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [　　　　　] (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE　TRANSFEROR/SELLER SIGNATURE(S)　DATE　TRANSFEREE/BUYER SIGNATURE(S)
X　　　　　　　　　　　　　X
PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY　　PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

## IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

**TBK BANK SSB** ✓
**12700 PARK CENTRAL DR**
**STE 1700**
**DALLAS**
**TX 75251**

2. X
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date ___

**CA167443340**

**022093**　REG. 17.30RS (REV 02/2016)

KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW.

111

# Exhibit 4

# EXTENSION TO LOAN AND SECURITY AGREEMENT
## ("EXTENSION")

Date: **FEBRUARY 23, 2017**                    Account No.: **400406361**

RE:    Loan And Security Agreement dated **MARCH 21, 2016** (as may have been amended or extended, the "Agreement")

Lender/Secured Party:        TBK Bank, SSB ("Lender")

Borrower(s):        RDX INC. and NAVDEEP KAUR SINGH ("Borrower")

Borrower hereby: (i) acknowledges as of the date hereof being indebted and liable to Lender in the amount of **$1,761,993.45** which represents the unpaid balance due and owing under the Agreement, including all accrued and unpaid interest, expenses, costs and any fees, extension fees, but the foregoing amount does not include any accrued and unpaid late charges that may be due as of the date hereof, and that such amount(s) plus the late charges, if any, is/are absolutely and unconditionally due and owing without defense, abatement, offset, setoff, claim, cause of action or counterclaim; and (ii) requests that Lender amend, modify and extend the schedule of installments/payments due under the Agreement; and (iii) promises to pay to the order of Lender the principal amount of **ONE MILLION SEVEN HUNDRED SIXTY ONE THOUSAND NINE HUNDRED NINETY THREE AND 45/100** dollars **($1,761,993.45)**, plus interest from the date hereof on the unpaid principal amount outstanding from time to time at the rate of **SIX** percent **(6.00%)** per annum, plus any accrued and unpaid late charges that may be due as of the date hereof (but in no event shall such rate exceed any maximum permitted by applicable law). The Borrower consents and agrees that in addition to the monthly installments described below, the Borrower shall pay the accrued and unpaid late charges due as of the date hereof, if any, upon demand. Principal and interest shall be paid in **31** consecutive monthly installments commencing on **APRIL 1, 2017** and on the same date of each month thereafter, as follows:

**30**   installment(s), each in the amount of **$61,636.47**; then

a final installment, in the amount of the then unpaid principal balance plus all accrued and unpaid interest and any other amounts due and owing under and pursuant to this Agreement.

If any payment of the Obligations (as defined below) remains overdue for more than ten (10) days (or such longer period as required by applicable law), Borrower hereby agrees to pay on demand, as a late charge, an amount equal to the lesser of: (i) five percent (5%) of each such overdue installment/payment, or, (ii) the maximum percentage of any such overdue installment legally permitted by applicable law. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late charge shall not constitute a waiver of default with respect to the overdue installment or prevent Lender from exercising any of its other available rights and remedies. Upon the occurrence of an Event of Default, any amounts due and to become due hereunder shall, without notice, bear interest, from the date such amounts are due until paid, at a rate (the "Default Rate") which is the lesser of: (a) the maximum rate per annum which Lender is permitted to charge, or (b) eighteen percent (18%) per annum. Interest shall be calculated on the basis of a 360-day year and for the actual number of days elapsed, unless such calculation would cause the effective interest rate to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. In no event shall the Extension or the Agreement be enforced in any way in which permits Lender to collect interest in excess of the maximum lawful rate. Should interest collected exceed such rate, Lender shall apply such excessive interest to the reduction of any principal and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of any principal, such excess interest shall be refunded to Borrower. In such event, Borrower agrees that Lender shall not be subject to any penalties for contracting for or collecting interest in excess of the maximum lawful rate. Borrower agrees to pay Lender a fee of up to $30.00 for a returned check. Lender may add the fee to the amount Borrower owes or collect the fee separately.

As a material inducement, and in consideration for Lender's agreement to this Extension, Borrower hereby: i) acknowledges, represents, warrants and agrees that the indebtedness described above is a valid and enforceable obligation of Borrower, absolutely and unconditionally due and payable in accordance with its terms without any defense, abatement, offset, setoff, claim, cause of action or counterclaim whatsoever, and ii) promises to pay such obligation to the order of Lender in accordance with the payment schedule set forth above, at Lender's office, or at such other place of payment as Lender may designate, and iii) agrees that in the event of default in the payment of any amount when due, or in the event of a default or any nonperformance under the Extension or the Agreement, Lender may at Lender's option, accelerate the maturity of the entire unpaid indebtedness and declare the entire unpaid indebtedness to be at once due and payable whereupon the entire unpaid indebtedness shall become immediately due and payable (the right to accelerate maturity of

Extension 801008  v01.00 non-cap lc

sums due under this Extension or the Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration), and iv) agrees that Lender may enforce all of its rights and remedies under the Agreement, this Extension, the Uniform Commercial Code and applicable law. Borrower hereby acknowledges the validity of and affirms all of its obligations to Lender, agrees that they are and shall be secured by this Extension and to the extent permitted by applicable law, Borrowers obligations to Lender under this Extension and the Agreement are irrevocable, absolute, and unconditional and Borrower absolutely and unconditionally promises and agrees to punctually and fully pay and perform all Obligations (defined below), with no right of offset, setoff, abatement, claim, cause of action, counterclaim or defense against Lender or any assignee. As further consideration for Lender's agreement to the terms of this Extension, Borrower grants to Lender a security interest/lien in any and all accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, securities entitlements, deposit accounts, investment property, and all other property of whatever nature and kind, wherever located, now owned or hereafter acquired, or in which Borrower now or hereafter has any right or interest in, and in all attachments, accessories, accessions, substitutions, replacements, replacement parts, additions, software and software upgrades including, without limitation, all property listed on (i) any schedule to any agreement between the parties, and (ii) the Agreement and/or this Extension and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof), insurance proceeds, and all of the foregoing is hereby collectively defined as the "Collateral" for all purposes. Borrower represents that the Collateral (without exception) shall be used exclusively for commercial business purposes and operations and not for personal, family or household purposes. The security interest granted hereby is to secure payment of (without reduction by reason of any claim, abatement, defense, setoff, counterclaim or recoupment, whether under the Extension or the Agreement or under any other writing between Borrower and Lender): (a) any and all loans, extensions of credit, endorsements, benefits and financial accommodations, or payments, previously, now or hereafter made, granted or extended by Lender to or on account of Borrower or which Lender has or may, grant or extend to or for the account of Borrower including the obligations to make payments hereunder; (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, interest, attorneys' fees and costs and expenses hereto and/or hereafter chargeable against Borrower by Lender or owing by Borrower to Lender or upon which Borrower may be and/or has become liable as endorser or guarantor; (c) any and all obligations and/or indebtedness of any and every kind of Borrower to Lender or any affiliate of Lender whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or hereafter arising, existing, incurred, contracted or owing to Lender now or in the future or acquired or to be acquired by Lender by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any agreement or other obligations, given to or received by Lender or any affiliate directly from Borrower or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties and (d) any and all extensions, renewals, amendments, rewrites, increases or modifications of any of the foregoing (all hereinafter called the "Obligations"). Borrower hereby authorizes Lender to file any financing statement(s) and/or to be named as lienholder on any vehicle title(s) necessary to perfect Lender's security interest in the Collateral, including, without limitation, any fixture filings and any amendments and continuation statements thereto pursuant to the Uniform Commercial Code then in effect (the "Code"), in form satisfactory to Lender, and shall pay the cost of perfecting Lender's security interest/lien in the Collateral, deemed by Lender to be necessary or desirable. Borrower further acknowledges, warrants and agrees that a first priority security interest in the Collateral described in the Agreement is and will continue to be vested in Lender, its successors and assigns, until the Borrower has fully paid and performed all Obligations to Lender, with interest, whether under the Agreement, Extension or otherwise. To the extent permitted by applicable law, Lender reserves the right to setoff on all of Borrower's deposit accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However this does not include any IRA, Keogh accounts, or any trust accounts for which setoff would be prohibited by applicable law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff on all sums due owing on any indebtedness to Lender by Borrower and against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided herein. Any promissory note made and delivered by Borrower to Lender in connection with this Extension shall be deemed evidence of the obligations described herein, and not payment thereof until such time as any such note is fully collected by Lender. Lender's agreement to this Extension shall not diminish or prejudice Lender's rights or alter Lender's position under the Agreement. Except as expressly modified by this Extension, all terms, conditions and provisions of the Agreement shall remain valid and binding, enforceable and in full force and effect.

As a further material inducement for Lender to agree to this Extension, it is agreed that Borrower shall not, unless otherwise required by law, have any right to voluntarily prepay any indebtedness now or hereafter owing to Lender (whether evidenced hereby or otherwise); provided, however, that Borrower may (unless otherwise expressly agreed to in writing) have the privilege of voluntarily prepaying any such indebtedness in full or in part at any time or from time to time if Borrower shall: (i) give five days prior written notice to Lender specifying the amount and date of any proposed voluntary prepayment and the indebtedness being voluntarily prepaid; (ii) prepay a minimum of $10,000 or greater (iii) pay the amount specified in such voluntary prepayment notice, in good funds, on the date specified in such notice; (iv) simultaneously pay, in good funds, all principal, interest, late charges, and other charges accrued and/or due to Lender through the date of such voluntary prepayment; and (v) simultaneously pay a prepayment premium equal to the product of fifteen hundredths percent (0.15%) of the principal amount then being voluntarily prepaid multiplied by the number of whole or partial calendar months between the date of the voluntary prepayment and the scheduled final maturity date of the amount being prepaid but in no event shall such amount exceed the maximum amount permitted by law. Any voluntary partial prepayment shall be applied to the scheduled

Extension 601008  v01.00 non-cap lc

installments of the indebtedness in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby and unless Lender agrees otherwise in writing, Borrower may not skip payments. The principal amount of any voluntary partial prepayment shall be applied as determined by Lender in its sole and absolute discretion. To the extent permitted by applicable law, if Lender accelerates maturity of sums due under this Extension as a result of Borrower's default, Lender has the right to charge Borrower, and Borrower agrees to pay Lender, in addition to any other remedy, liquidated damages in an amount equal to the product of fifteen hundredths percent (0.15%) of the accelerated unpaid principal balance due under the Extension multiplied by the number of whole or partial calendar months between the date of the default and the scheduled final maturity date of the Extension but in no event shall such amount exceed the maximum amount permitted by law. Lender and Borrower covenant and agree to take all such actions and to execute all such documents as may be desirable to implement the provisions of this Extension and the Agreement fully and effectively.

In the event any proceeding under any bankruptcy or insolvency law is commenced by or against Borrower or any other party liable on the Extension or the Agreement, Borrower unconditionally and irrevocably agrees (i) not to object or otherwise oppose a motion by Lender to lift the automatic stay under section 362 of the United States Bankruptcy Code or any similar or equivalent provision of applicable law, (ii) that Lender shall be entitled to immediate relief from the automatic stay so as to take possession of the Collateral described in herein or in the Agreement and to exercise its rights and remedies under the terms of the Agreement, this Extension and applicable non-bankruptcy law without delay, (iii) that sufficient cause exists to grant Lender relief from the automatic stay, including but not limited to the lack of adequate protection of Lenders interests, (iv) that Borrower has no equity in the Collateral, (v) that the Collateral is not necessary to an effective reorganization of Borrower, and (vi) that any bankruptcy or similar proceeding in which Borrower fails to honor any of the above agreements shall be deemed to have been commenced in bad faith to frustrate the exercise of Lender's rights and remedies under the Agreement, the Extension and at law. The terms of this paragraph shall survive the Extension, the Agreement and any default thereunder. Borrower acknowledges and agrees that Borrower has the knowledge and experience in financial and business matters to evaluate the merits and risks of the business transaction contemplated herein, is not in a disparate bargaining position relative to negotiating this Extension and willingly waives and releases, without limitation, all rights and remedies associated with the Texas Deceptive Trade Practices Act ("DTPA") or such similar statute. In the event that any one or more of the provisions contained in this Extension or the Agreement shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Extension or the Agreement. Borrower waives presentment for payment, demand, protest, notice of protest and notice of non-payment, default and dishonor, notice of intent to accelerate, notice of acceleration, and further, to the extent allowed by law, waive all benefit of valuation, appraisement and exemption laws. Lender may, without notice, extend the time of payment of this Extension and the Agreement, postpone the enforcement hereof, grant any other indulgence, add or release any party primarily or secondarily liable hereon and/or release or change any collateral securing this Extension or the Agreement without affecting or diminishing Lender's right of recourse against Borrower, all endorsers, guarantors and all other parties liable on this Extension or the Agreement, which right is hereby expressly reserved.

**EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (a) ARISING UNDER THE EXTENSION OR THE AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE EXTENSION OR THE AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO. IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTIONS SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY. This Extension shall be deemed received and accepted by Lender in Dallas, Texas on the date Lender signs below.** This Agreement and all transactions contemplated hereunder and/or evidenced hereby shall be governed by, interpreted and construed under, and enforced in accordance with the internal laws of the State of Texas, without regard to its conflicts of laws principles. If any provision of the Extension or the Agreement is held illegal or unenforceable in a judicial proceeding or by any statute or regulation, such provision shall be severed and shall be inoperative, and the remainder of the Extension and the Agreement shall remain operative and binding on the Parties. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Lender so elects, be instituted in any United States federal or state court located in Dallas County, Texas or, if none, any court located in the State of Texas (the "Acceptable Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should Borrower file any case or proceeding in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum. Process in any such judicial action or proceeding may be served on any party anywhere in the world, whether within or without the state of Texas. **THIS WRITTEN AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN**

Extension 801008  v01.00 non-cap lc

115

THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. NO MODIFICATION OR AMENDMENT OF THIS EXTENSION SHALL BE EFFECTIVE UNLESS IN WRITING AND SIGNED BY A DULY AUTHORIZED OFFICER OF LENDER AND BORROWER AND ONLY TO THE EXTENT SPECIFICALLY SET FORTH THEREIN. NO WAIVER OF ANY TERM OR PROVISION OF THE EXTENSION OR THE AGREEMENT SHALL BE BINDING UNLESS EXECUTED IN WRITING AND SIGNED BY AN AUTHORIZED OFFICER OF LENDER AND BORROWER. In the event Lender utilizes an attorney for the purpose of effecting collection of any monies due hereunder or under any other indebtedness due and owing from Borrower to Lender (whether or not Lender has retaken the Collateral or any part thereof) or for the purpose of recovering the Collateral, Borrower consents and agrees to pay Lender's reasonable attorney's fees, costs and expenses.

Time is of the essence with respect to the performance of Borrower's obligations under the Agreement or this Extension and any other agreement between Borrower and Lender. Notwithstanding anything to the contrary in this Extension or any related writing, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Extension or the Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstances whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof such excess shall be refunded to Borrower. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Borrower and Lender. If any part of the Extension or the Agreement conflicts with any law, i) that law will control and ii) the part of the Extension and/or the Agreement that conflicts with any law will be modified to comply with the law and iii) the rest of the Extension and/or the Agreement shall remain valid. Borrower unconditionally and irrevocably stipulates and agrees that Borrower shall have no right to assert any claim, cause of action or counter claim, or to commence any action or proceeding against Lender as a result of, arising out of, or in any way related to the Agreement, the Collateral or this Extension more than two years and one day after such claim or cause of action shall accrue but in no event longer than any applicable statute of limitations. Borrower and Guarantor (if any) hereby forever, finally, fully and completely release, relieve, acquit, remise, and discharge Lender and its successors, predecessors and assigns, affiliated companies, subsidiary companies, parent companies, past and present employees, agents, partners, representatives, attorneys, accountants, directors, shareholders, officers, and any other person acting in his or her individual or representative capacities, from any and all liens, losses, claims, debts, liabilities, demands, obligations, acts, agreements, litigation, reports, costs and expenses (including, without limitation, attorneys' fees), damages, injuries, suits, actions or causes of action of whatever kind or nature, whether known or unknown, suspected or unsuspected, contingent or fixed, from the beginning of time until the date of this Extension agreement.

Borrower: RDX INC.

By: _____
Name: NAVDEEP KAUR SINGH
Title: CEO/PRESIDENT

Borrower: NAVDEEP KAUR SINGH

By: _____
Name: NAVDEEP KAUR SINGH
Title: SOLE PROPRIETOR

The undersigned hereby (i) consents to this Extension, (ii) requests that Lender accept and agree to this Extension, and (iii) agrees that any and all of Lender's rights of recourse against the undersigned shall in no way be diminished, altered or affected by this Extension.

GUARANTOR:

By: _____
NAVDEEP KAUR SINGH

GUARANTOR:

By: _____
DAVE SINGH

ACCEPTED AND AGREED TO:
TBK Bank, SSB

By: _____ (Title)

Extension 801008  v01.00 non-cap lc

# Exhibit 5

## LOAN AND SECURITY AGREEMENT

**THIS LOAN AND SECURITY AGREEMENT** (hereinafter referred to as the "Agreement") is entered into as of **JUNE 24, 2016** (hereinafter referred to as the "Execution Date") by and between **TBK BANK, SSB**, a Texas State Savings Bank, having its principal place of business at 12700 Park Central Drive, Suite 1700, Dallas, TX 75251 (hereinafter referred to as "Lender") and the borrower(s) named below (hereinafter referred to individually and collectively, jointly and severally and interchangeably as "Borrower").

| | |
|---|---|
| Borrower: | RDX INC. |
| Address: | 2436 S SARAH STREET |
| | FRESNO, CA 93706 |

1. **Promise to Pay.** In consideration of Lender making a loan to Borrower subject to the terms and conditions set forth in this Agreement, Borrower absolutely and unconditionally promises to pay to the order of Lender the principal amount of **SIX HUNDRED NINETY FIVE THOUSAND SEVEN HUNDRED FIFTY AND 00/100** Dollars (**$695,750.00**), plus interest from the Execution Date on the unpaid principal balance outstanding from time to time at the rate of **SIX** percent (**6.00%**) per annum (but in no event shall such rate exceed any maximum permitted by applicable law). Principal and interest shall be paid in 61 consecutive monthly installments/payments (hereinafter referred to as "installments" or "payments") as follows:

| | | | |
|---|---|---|---|
| 60 | Installment(s), each in the amount of | $ 11,549.10 | ; then |
| 1 | Installment, in the amount of | $ 142,222.56 | |

Plus all unpaid principal, all accrued and unpaid interest and any other amounts due and owing under and pursuant to this Agreement.

2. **Payment Terms.**

   2.1. **Commencement Date/Application of Payments.** Consecutive monthly installments shall commence on the **5TH** day of **SEPTEMBER, 2016** and shall be due on the same day of each month thereafter until the indebtedness under this Agreement is paid in full. Each installment, at Lender's discretion may be applied first to accrued and unpaid interest and late charges if any, with the remainder applied to reduction of principal.

   2.2. **Payment Direction.** All payments shall be made in lawful money of the United States at Lender's address listed herein or such other place, which Lender may designate in writing from time to time.

   2.3. **Late Charges.** If any payment of the Obligations (as defined below) remains overdue for more than ten (10) days after the due date, Borrower hereby agrees to pay on demand, as a late charge, an amount equal to the lesser of (i) five percent (5%) of each such overdue installment, or (ii) the maximum percentage of any such overdue installment permitted by applicable law. Borrower agrees that the amount of such late charge represents a reasonable estimate of the cost to Lender of processing a delinquent payment and that the acceptance of any late charge shall not constitute a waiver of default with respect to the overdue installment or prevent Lender from exercising any of its other available rights and remedies.

   2.4. **Returned Payments.** If Borrower's check (or payment in any other form) is returned unpaid or otherwise rejected for any reason Borrower agrees to pay Lender a fee (the "Returned Payment Fee") in the amount of $25.00, or such lesser amount as may be limited by law. Lender may add the fee to the amount Borrower owes or collect the fee separately.

   2.5. **Joint and Several Liability.** If more than one party signs this Agreement as Borrower, the obligations of each of them shall be joint and several regardless of the source of the collateral or the particular Borrower with which the obligation originated, and each Borrower waives any suretyship or other defenses that it might raise with respect to any other Borrower.

Triumph LSA 1 Balloon 601004 v02.00      Copyright 2015

3. **Interest**. Interest shall be calculated on the basis of a 360-day year and for the actual number of days elapsed, unless such calculation would cause the effective rate of interest to exceed the maximum rate allowed by applicable law, in which case such calculation shall be on the basis of a 365 day year. In no event shall this Agreement be enforced in any way that permits Lender to charge or collect interest or late charges in excess of the maximum lawful rate. In such event, Borrower agrees that Lender shall not be subject to any penalties for contracting for or collecting interest or late charges in excess of the maximum lawful rate. Notwithstanding anything to the contrary in this Agreement or any related writing, all agreements between Borrower and Lender, whether now existing or hereafter arising and whether written or oral, are hereby limited so that in no contingency, whether by reason of demand for payment or acceleration of the maturity hereof or otherwise, shall the interest contracted for, charged or received by Lender exceed the maximum amount permissible under applicable law. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration. If, from any circumstances whatsoever, interest would otherwise be payable to Lender in excess of the maximum lawful amount, the interest payable to Lender shall be reduced to the maximum amount permitted under applicable law; and if from any circumstance Lender shall ever receive anything of value deemed interest by applicable law in excess of the maximum lawful amount, an amount equal to any excessive interest shall be applied to the reduction of the principal hereof (or due under any other agreement) and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of the principal hereof (or due under any other agreement) such excess shall be refunded to Borrower, if allowed by applicable law. All interest paid or agreed to be paid to Lender shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the principal (including the period of any extension or renewal hereof) so that the interest hereon (or due under any other agreement) for such full period shall not exceed the maximum amount permitted by applicable law. This paragraph shall control all agreements between Borrower and Lender.

4. **Prepayment**. As a material inducement to Lender to advance funds or otherwise provide financial accommodations to or for the benefit of Borrower, and or in consideration of Lender having previously done so, it is agreed that Borrower shall not unless otherwise required by law, have any right to voluntarily prepay any indebtedness for borrowed money now or hereafter owing to Lender; provided however that Borrower may, subject to the terms and conditions contained herein, have the privilege of voluntarily prepaying the obligation set forth in paragraph 1 of this Agreement in part or full at any time, provided, Borrower shall: (i) give five (5) days' prior written notice to Lender specifying the date and amount of any proposed voluntary prepayment and the indebtedness being voluntarily prepaid, and (ii) prepay a minimum amount of $10,000 or greater, and (iii) pay the amount specified in such voluntary prepayment notice, in good funds, on the date specified in such notice, and (iv) simultaneously pay, in good funds, all principal, interest, late charges, and other charges accrued and/or due to Lender through the date of any such voluntary prepayment, and (v) simultaneously pay a prepayment premium equal to the product of .20% of the principal amount then being voluntarily prepaid multiplied by the number of whole or partial calendar months between the date of the voluntary prepayment and the scheduled final maturity date, but in no event shall such amount exceed the maximum amount permitted by applicable law. Any voluntary partial prepayment shall be applied to the scheduled installment(s) of the indebtedness in the reverse order of their respective maturities, so that the amount and due date of only the latest maturing installment(s) shall be affected thereby and unless Lender agrees otherwise in writing, Borrower may not skip payments. The principal amount of any voluntary partial prepayment shall be applied as determined by Lender in its sole and absolute discretion. To the extent permitted by applicable law, if Lender accelerates the maturity of sums due under this Agreement as a result of Borrower's default, Lender has the right to charge Borrower, and Borrower agrees to pay Lender, in addition to any other remedy, liquidated damages in an amount equal to the product of .20% of the accelerated unpaid principal balance due under this Agreement multiplied by the number of whole or partial calendar months between the date of the default and the scheduled final maturity date of this Agreement, but in no event shall such amount exceed the maximum amount permitted by applicable law. Lender and Borrower covenant and agree to take all such actions and to execute all such documents as may be desirable to implement the provisions of this Agreement fully and effectively.

5. **Disclaimer**.  **THIS AGREEMENT IS A LOAN AND SECURITY AGREEMENT.  BORROWER ACKNOWLEDGES THAT THE EQUIPMENT (AS DEFINED HEREIN BELOW) HAS BEEN OR WILL BE SELECTED AND ACQUIRED SOLELY BY BORROWER AND THAT LENDER MAKES NO REPRESENTATION OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY OR FITNESS OF THE EQUIPMENT (AS DEFINED HEREIN BELOW) FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATIONS OR WARRANTIES**

Copyright 2015

Triumph LSA 1 Balloon 601004 v02.00)

**WHATSOEVER, EXPRESS OR IMPLIED. BORROWER'S OBLIGATIONS HEREUNDER ARE ABSOLUTE AND UNCONDITIONAL.**

6. <u>Collateral</u>. The goods, chattels and property listed on <u>Schedule A</u> hereto (hereinafter referred to as the "Equipment") and any and all accounts, accounts receivable, chattel paper, electronic chattel paper, collateral, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, securities entitlements, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, now owned or hereafter acquired by Borrower, or in which Borrower now or hereafter has any right or interest in, and all attachments, accessories, accessions, substitutions, replacements, replacement parts, additions, software and software upgrades, including, without limitation, all property listed on any schedule to any agreement between the parties, and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper and/or electronic chattel paper arising out of or related to the sale, lease, rental or other disposition thereof) of and to all of the foregoing and is hereby collectively defined and referred to herein as the "<u>Collateral</u>" for all purposes. Borrower represents that the Collateral (without exception) shall be used exclusively for commercial business purposes and operations and not for personal, family or household purposes.

7. <u>Security Interests.</u> In consideration of Lender entering into this Agreement, Borrower hereby pledges, conveys, assigns and grants to Lender a security interest/lien in and to the Collateral to Lender and to its successors and assigns. The word "Lender" includes the subsidiaries, affiliates, heirs, successors, assigns and transferees. The security interest granted herein is to secure payment of any and all liabilities or obligations of Borrower to Lender, i) whether previously, contemporaneously or subsequently incurred or created, ii) whether joint or several, direct or indirect, absolute or contingent, matured or unmatured, secured or unsecured, heretofore arising, now existing or hereafter arising, iii) without reduction by reason of any claim, defense, set-off, abatement, offset, counterclaim or recoupment, and iv) whether under this Agreement or under any other writing between Borrower and Lender including but not limited to (a) any and all loans, advances, guaranties, notes, security agreements, lease agreements, rental agreements, bailment agreements, loan and security agreements, extensions of credit, endorsements, benefits and financial accommodations, or payments, previously, now or hereafter made, granted or extended by Lender to or on account of Borrower or which Lender has or may, grant or extend to or for the account of Borrower including the obligations to make payments hereunder; (b) any and all interest, commissions, obligations, liabilities, indebtedness, charges, late charges, interest, attorneys' fees and costs and expenses hereto and/or hereafter chargeable against Borrower by Lender or owing by Borrower to Lender or upon which Borrower may be and/or has become liable as endorser or guarantor; (c) all obligations and/or indebtedness of any and every kind of Borrower to Lender or any affiliate of Lender whether direct or indirect, whether contingent or absolute, whether matured or unmatured and whether now or hereafter arising, existing, incurred, contracted or owing to Lender in the future or acquired or to be acquired by Lender by one or more assignments, transfers or otherwise, including but not limited to amounts due upon any agreement or other obligations, given to or received by Lender or any affiliate directly from Borrower or by way of assignment from any one or more third parties and whether or not presently contemplated by the parties and (d) any and all extensions, renewals, amendments, rewrites, increases or modifications of any of the foregoing (all hereinafter called the "<u>Obligations</u>" and/or the "<u>Liabilities</u>"). Borrower hereby authorizes Lender to file and/or re-file any financing statement(s) and to be named as lienholder on any vehicle title(s) needed to perfect Lender's security interest in the Collateral, including, without limitation, any fixture filings and any amendments and continuation statements thereto pursuant to the Uniform Commercial Code then in effect (hereinafter referred to as the "<u>Code</u>"), in form satisfactory to Lender, and Borrower shall pay the cost of perfecting Lender's security interest in the Collateral as is deemed by Lender to be necessary or desirable.

8. <u>Representations and Warranties.</u> Borrower represents and warrants that:

8.1.  Borrower has the lawful and organizational power and authority to own its assets and to conduct the business in which it is engaged and is duly authorized and empowered to enter into this Agreement, to perform hereunder and to execute this Agreement as its legal, valid and binding obligation.

8.2.  Borrower is duly existing and in good standing in its state of formation and qualified and licensed to do business in, and in good standing in, any state in which the conduct of its business or its ownership of property requires that it be qualified. Except as specifically disclosed in writing to Lender, Borrower (i) has not been known as or used any corporate, fictitious or trade names or (ii) has not been the surviving corporation of a merger or consolidation or acquired all or substantially all of the assets of any person.

8.3.  This Agreement and the other agreements, instruments and documents executed herewith do not and will not (a) violate any provisions of the articles of incorporation or formation, bylaws, operating agreement or other analogous governing documents of Borrower, or any contract, agreement, law, regulation, order, injunction, judgment, decree or writ to which Borrower is subject, (b) result in the creation or imposition of any lien upon any

          Copyright 2015

120

Collateral of Borrower, other than those contemplated hereby, (c) constitute or result in a default under any agreement, bond or indenture by which Borrower is bound or in which any of its property is subject or materially and adversely affects its ability to perform its obligations under this Agreement hereunder, or (d) requires the consent or approval of any other person or entity, including without limitation, any regulatory authority or governmental body of or within the United States.

8.4.     All financial statements and information relating to Borrower which have been furnished by Borrower to Lender have been prepared from the books and records of Borrower, accurately reflect Borrower's financial condition for the time period covered thereby, and are true, correct and complete in all material respects, and there have been no material adverse changes in the condition (financial or otherwise) or prospects of Borrower since submission of the loan application.

8.5.     Borrower has good, marketable and indefeasible title to its properties and assets reflected as being owned by it on any balance sheet of Borrower submitted to Lender as of the date thereof. Except for (i) the security interest granted to Lender under the Agreement and (ii) any other security interest previously disclosed by Borrower to Lender in writing, Borrower is the owner of the Collateral, has good and marketable title thereto free and clear from any adverse lien, security interest or encumbrance. Notwithstanding the foregoing, Borrower may not at any time pledge a security interest/lien to any party other than to Lender on, in or to any of the Equipment or the Collateral.

8.6.     Borrower has filed all tax returns and reports required to be filed and has paid all taxes, assessments, fees and other governmental charges levied upon it.

8.7.     Borrower is not in breach of or in default under any loan agreement, indenture, bond, agreement or other evidence of indebtedness, or any other material agreement or any court order, injunction or decree or any lien, statute, rule or regulation. Borrower's properties are and will continue to be in compliance with all federal, state and local laws, rules and regulations, and all orders of any federal, state or local legislative, administrative or judicial body or official, except to the extent the failure to so comply would not have a material adverse effect on Borrower. Borrower has obtained and will continue to maintain all permits, approvals, authorizations and licenses necessary to conduct its business as presently conducted, except to the extent the failure to have such permits, approvals, authorizations or licenses would not have a material adverse effect on Borrower.

8.8.     Except as disclosed to Lender in writing, there is no litigation, legal or administrative proceeding, investigation or other action of any nature pending, or to the knowledge of Borrower, threatened against or affecting Borrower which involves the possibility of any judgment or liability not fully covered by insurance, and which may adversely affect the business or the properties of Borrower or its ability to carry on business as now conducted or would adversely affect the ability of Borrower to satisfy its obligations under the Agreement.

8.9.     None of the preprinted text of this Agreement has been altered, modified, or stricken by Borrower or anyone else.

8.10.    Borrower or its authorized representative properly executed this Agreement in Borrower's name and all signatures on this Agreement are genuine.

8.11.    Borrower acknowledges and agrees that its obligations due hereunder are absolutely and unconditionally due and owing to Lender or its successors and assigns without notice or demand and there are no defenses, claims, counterclaims, causes of action, abatements, offsets or set-offs with respect to this Agreement and that this Agreement is fully enforceable against the Borrower. Borrower's obligation to pay the installments and other payments due hereunder shall be absolute and unconditional and shall not be affected by reason of (i) any defect in, lack of fitness for use, damage to, loss of possession or use of or destruction of, all or any of the Collateral or Equipment, and/or (ii) the prohibition or other restriction against Borrower's use of said Collateral or Equipment, and/or (iii) any other cause, it being the agreement of the parties that this Agreement and any other amount payable by Borrower hereunder shall continue to be payable in all events in the manner and at the times provided herein or in any amendment or extension executed by the parties.

9. **Covenants by Borrower**. Borrower agrees:

9.1.     Borrower will not amend its certificate or articles of incorporation, formation, or partnership agreement (as applicable), its bylaws or operating agreement or otherwise change its legal name or structure, or consolidate with or merge into or acquire any person or entity, or permit any other person or entity to consolidate with or merge into or acquire Borrower or acquire the stock of any person or entity or form any subsidiary, without prior

approval of Lender or permit any material change to be made in the character of its business as conducted as of the date hereof.

9.2.  Borrower will maintain its legal existence, rights and franchises and observe and comply with all applicable laws, statutes, codes, acts, ordinances, judgments, injunctions, rules, regulations, certificates, franchises, permits and licenses of all federal, state, county, municipal and other governmental authorities.  Borrower agrees that it will not change the State where it was incorporated or formed or otherwise, nor change its name or address, without providing Lender with sixty (60) days prior written notice.

9.3.  Borrower shall pay and promptly file all tax returns and reports required to be filed and pay when due all taxes (including but not limited to personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Collateral or for its use or operation or upon this Agreement or upon any instruments evidencing the Obligations.

9.4.  Borrower shall use the Collateral for commercial and business purposes only and operate it by qualified personnel in accordance with applicable manufacturers' and regulatory maintenance and performance standards. Borrower shall adhere to reasonable practices for Borrower's industry and the type of Collateral. Borrower shall keep the Collateral (a) free from any adverse lien or encumbrance (and shall promptly notify Lender of any attachment of any such lien or any seizure or levy), (b) in good working order, condition and repair and shall not waste or destroy the Collateral or any part thereof and (c) appropriately protected from the elements, and shall furnish all required parts and servicing (including any contract service necessary to maintain the benefit of any warranty of the manufacturer). Borrower shall not use the Collateral in violation of any statute, ordinance, regulation or order. Lender may examine and inspect the Collateral and any and all books and records of Borrower during business hours at any time and such right of inspection shall include the right to copy Borrower's books and records and to converse with Borrower's officers, employees, agents, and independent accountants.

9.5.  Borrower shall not sell, lease, assign, transfer or otherwise dispose of (i) the Collateral, except as otherwise specifically permitted by the Agreement, or (ii) all or any substantial part of its assets, without the prior written consent of Lender.

9.6.  The Collateral shall be kept primarily at Borrower's address listed in this Agreement, or listed on any Schedule(s) hereto (unless the Collateral is mobile, in which case it may be moved in the ordinary course of business), and Borrower shall give prompt written notice to Lender of any change in the location(s) of the Collateral. Notwithstanding the foregoing, the Collateral shall not be moved outside the United States of America without Lender's prior written consent.

9.7.  Borrower shall not permit the Collateral to become attached to real estate in such a way that it would be considered part of the realty or designated a "fixture." Notwithstanding any presumption of applicable law, and irrespective of any manner of attachment, the Collateral shall not be deemed real property but shall retain its character as personal property. However, Borrower shall, at the option of Lender, furnish the Lender with waiver(s) of any interest in the Collateral in recordable form, signed by all persons having an interest in the real estate where the Collateral may be located, which is or might be deemed to be prior to Lender's security interest.

9.8.  Borrower shall keep the Collateral free and clear of any lien, security interest or encumbrance (except for the security interest/lien granted hereunder to Lender) and shall not sell, lease, assign (by operation of law or otherwise) exchange or otherwise dispose of any of the Collateral, except as expressly permitted herein. Borrower shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein. At the request of Lender, Borrower shall execute, acknowledge and deliver to Lender any document or instrument required by Lender to further the purposes of the Agreement.  If any of the Collateral is subject to certificate of title law, Borrower will cause Lender's security interest/lien to be noted on such certificate of title and promptly deliver such certificate to Lender.

10. **Financial Statements.** Borrower shall furnish to Lender such financial statements, income statements, balance sheets, statements of cash flow, income tax returns, operating statements and other financial information as requested by Lender in its sole and absolute discretion.  Borrower and any Guarantor agrees that any financial statements or other nonpublic information which Borrower or any Guarantor provides to Lender may be disclosed by Lender for legitimate business purposes to Lender's officers, directors, employees, agents, affiliates, attorneys, advisors, recourse providers, prospective assignees or participants, auditors, regulators or other parties pursuant to law.

Triumph LSA 1 Balloon 601004 v02.00                                    Copyright 2015

122

11. **Insurance.** Borrower shall maintain and will continue to maintain with financially sound and reputable insurers, insurance with respect to the Collateral against all risks of loss or damage from every cause and other risks with such coverage and containing such terms, in such form, for such periods and written by such companies as shall be satisfactory to Lender. Furthermore, Borrower shall furnish to Lender appropriate additional insured endorsements and/or lender loss payable endorsements in form and substance satisfactory to Lender, naming Lender as loss payee as its interests may appear, and providing (a) for not less than the full replacement value as determined by Lender in its sole discretion and shall carry liability and property damage insurance covering the Equipment and ensure that all proceeds thereunder shall be payable to Lender (the proceeds of such insurance, at the option of Lender, shall be applied toward the replacement, repair or applied to reduce the indebtedness of Borrower to Lender), (b) no such insurance shall be affected by any act or neglect of the insured or owner of the property described in such policy, and (c) that such policy and loss payable clauses may not be cancelled, amended or terminated unless at least thirty (30) days' prior written notice is given to Lender, and Borrower shall ensure that the policies reflect such information. Upon request of Lender, Borrower will furnish or cause to be furnished to Lender from time to time certificates or other evidence satisfactory to Lender of compliance with the foregoing insurance provisions as well as a summary of the insurance coverage of Borrower and the Subsidiaries in form and substance satisfactory to Lender and, if requested, will furnish Lender copies of the applicable policies.

12. **Power of Attorney.** BORROWER HEREBY APPOINTS LENDER OR ANY OFFICER, EMPLOYEE, DESIGNEE OR ASSIGNS OF LENDER, AS BORROWER'S ATTORNEY-IN-FACT TO, IN BORROWER'S OR LENDER'S NAME: (a) PREPARE, EXECUTE AND SUBMIT ANY NOTICE OR PROOF OF LOSS IN ORDER TO REALIZE THE BENEFITS OF ANY INSURANCE POLICY INSURING THE COLLATERAL; (b) PREPARE, SUBMIT, EXECUTE AND FILE ANY AGREEMENT, DOCUMENT, FINANCING STATEMENT, TITLE APPLICATION, INSTRUMENT (OR ANY OTHER WRITING OF RECORD) THAT, IN LENDER'S OPINION, IS NECESSARY TO PERFECT AND/OR GIVE PUBLIC NOTICE OF THE INTERESTS OF LENDER IN ANY COLLATERAL THAT SECURES OR THAT MAY SECURE THE INDEBTEDNESS OF BORROWER TO LENDER AND (c) ENDORSE BORROWER'S NAME ON ANY REMITTANCE, CHECK OR DRAFT REPRESENTING PROCEEDS OF ANY INSURANCE RELATING TO THE COLLATERAL OR THE PROCEEDS OF THE SALE, LEASE OR OTHER DISPOSITION OF THE COLLATERAL. THIS POWER IS COUPLED WITH AN INTEREST AND IS IRREVOCABLE AS LONG AS THE INDEBTEDNESS HEREUNDER REMAINS UNPAID.

13. **Events of Default.** The occurrence of any one or more of the following events shall constitute an "Event of Default": (i) Borrower fails to promptly pay any payment required hereunder on or before the due date of such payment including but not limited to those identified in paragraph 1 above, or in any amendment or extension agreement entered into between the parties; (ii) Borrower or any guarantor shall (a) fail to pay any indebtedness for borrowed money of the Borrower or such Guarantor, or any interest or premium thereon, when due (whether by scheduled maturity, required prepayment, acceleration, demand or otherwise), or (b) fail to perform any term, covenant, or condition on its part to be performed under any agreement or instrument relating to such indebtedness, or if any such indebtedness shall be declared to be due or payable or required to be prepaid (other than by a regularly scheduled required prepayment) prior to the stated maturity thereof, or (c) default under any other agreement for borrowed money, or (d) fail to perform any of the other obligations required to be performed by Borrower or Guarantor hereunder or under any Schedule, amendment, or documents executed in connection herewith or any other agreements between the parties, or if Borrower or any Guarantor defaults in the payment or performance of any other obligations due and owing to Lender or its affiliates, or (e) fails to comply with any representation, warranty or covenants contained herein or in any other agreement between the parties, or (iii) the death of Borrower or any Guarantor, if a natural person, or the dissolution of Borrower or any Guarantor, if a business organization, or (iv) the filing of any petition or complaint under the federal Bankruptcy Code or other federal or state acts of similar nature, by or against Borrower, or an assignment for the benefit of creditors by Borrower, or (v) an application for or the appointment of a receiver, trustee or conservator, voluntary or involuntary, by or against Borrower or for any substantial assets of Borrower, or (vi) insolvency of Borrower under either federal or state law or applicable principles of equity, or (vii) entry of judgment, issuance of any garnishment or attachment, or filing of any lien, claim or government attachment against the Collateral or which, in Lender's sole discretion, might impair the Collateral or the failure to pay, including without limitation, any taxes, liens, mechanics liens, warehouseman's liens, or (viii) any representation, covenant or warranty made by Borrower herein or in any other agreement between the parties or in any statement given to Lender shall be materially untrue or the determination by Lender that a material misrepresentation of fact has been made by Borrower in this Agreement or in any writing supplementary or ancillary hereto, or (ix) a determination by Lender that Borrower has suffered a material adverse change in its condition (financial or otherwise), business or operations from the date of this Agreement and/or Lender in good faith believes that the prospect of payment or performance of any of the obligations under this Agreement is impaired and/or Borrower or

Triumph LSA 1 Balloon 601004 v02.00     Copyright 2015

123

Guarantors affairs so change as to in Lender's opinion, increase the credit risk involved and Lender thereby becomes insecure as to the performance of this Agreement or any other agreement between the parties, or (x) any actual or anticipated revocation, nonrenewal or termination of a guarantee, letter of credit, surety bond or other instrument issued for the benefit of Lender as additional security for the Obligations, or (xi) any unauthorized filing by Borrower of a termination statement for any financing statement or other recorded instrument filed by Lender, or (xii) a change in the management, operations, ownership of stock or membership units or control of Borrower; or Borrower sells all or substantially all of its stock or partnership or membership interests; or Borrower sells all or substantially all of its assets or consolidates with or merges into any other entity; or its stockholders, partners or members sell all or substantially all of their stock or partnership or membership interests, or (xiii) Lender at any time deems the security afforded by this Agreement unsafe, inadequate or at any risk or any of the Collateral is or becomes in danger of concealment, transfer, sale, assignment, hypothecation or misappropriation, or (xiv) the filing or imposition of any levy, execution or attachment, against Borrower or any guarantor that is not released within sixty (60) hours, or (xv) Borrower shall incur, create, assume, cause or suffer to exist any mortgage, deed of trust, trust, lien, security interest, pledge, hypothecation, other encumbrance (except Lender's security interest), or attachment or execution of any kind whatsoever upon, affecting or with respect to the Collateral or any of Lender's security interests under this Agreement or any of the Obligations, or (xvi) Borrower shall sell, transfer, pledge, assign, rent, lease, lend, destroy or otherwise transfer or dispose of any Collateral, or (xvii) failure of Borrower a) to provide Lender with proof of insurance on the Collateral and in which names Lender as loss payee or b) to obtain or maintain insurance on the Collateral, all of the foregoing in a form and amounts satisfactory to Lender in its sole discretion, or (xviii) any of the Obligations, this Agreement, the security interest granted herein or any provision hereof for any reason attributable to Borrower, ceases to be in full force and effect or shall be declared to be null and void or the validity or enforceability thereof shall be contested by Borrower or Borrower shall deny that it has any further liability or obligation hereunder, or (xix) Borrower defaults in the prompt payment, performance or fulfillment of any obligations of any kind or nature to any other party, or (xx) Borrower or any Guarantor ceases to do business, or (xxi) a judgment is entered against Borrower or any Guarantor.

14. **Remedies.** Upon the occurrence of any default or Event of Default, or in the event of a default in the payment of any amount when due, or in the event of a default in the performance or any nonperformance of any obligation due and owing under this Agreement or any Obligations of Borrower to Lender: (i) all Liabilities of Borrower shall, at the option of Lender, become immediately due and payable and Lender may accelerate the maturity of the entire unpaid indebtedness and declare the entire indebtedness under all or any part of the Obligations to be at once due and immediately payable, whereupon the entire unpaid indebtedness shall become immediately due and payable without notice or demand. The right to accelerate maturity of sums due under this Agreement does not include the right to accelerate any interest which has not otherwise accrued on the date of the acceleration, and Lender does not intend to charge or collect any unearned interest in the event of acceleration, and (ii) Lender shall have and may exercise all of the rights and remedies granted to a secured party under the Code, and all other rights and remedies available to creditors at law or in equity and Lender may sue to enforce Borrower's performance hereunder, or may exercise any other remedy then available to Lender permitted at law or in equity whether or not stated herein and whether stated in this paragraph or any other paragraph contained in the Agreement or any other agreement between the parties, and (iii) Lender shall have the right, immediately, and without notice or other action, to set-off against any of Borrower's liabilities to Lender, any money owed by Lender in any capacity to Borrower, whether or not due, and (iv) Lender is hereby authorized and empowered, with or without the aid of any person or persons, to enter any premises where any of the Collateral or any part thereof is or may be located, and to assemble and/or remove the Collateral and/or to render the Collateral unusable and may take possession of all or part of the Collateral, at any time, wherever the Collateral may be and Lender may proceed with or without judicial process to take possession of all or any part of the Collateral, and (v) Borrower agrees that Lender may enter any premises, with or without process of law, voluntarily or involuntarily, without notice, demand or legal process (Borrower, if permitted by applicable law, hereby waiving any right to notice or a hearing) and search for the Collateral or any part thereof, and Lender may repossess/take possession of, remove, and/or keep and store the Collateral on said premises until sold, without liability for trespass nor charge for storage, all without liability to Borrower arising out of such entry, taking possession or removal, or using premises to store or show the Collateral for sale or other disposition without charge. Borrower shall do everything necessary to make same available to Lender (including, without limitation, assembling the Collateral, delivering and making it available to Lender at a place designated by Lender which is reasonably convenient to Borrower and Lender), and (vi) Borrower agrees to immediately deliver possession of the Collateral to Lender, and agrees to assign, transfer and deliver at any time the whole or any portion of the Collateral or any rights or interest therein in accordance with the Code and other applicable law without limiting the scope of Lender's rights thereunder, and (vii) Subject to applicable law, Lender may sell the Collateral at public or private sale, or retain the Collateral in full or partial satisfaction of the indebtedness due to Lender or dispose of the Collateral in any

124

other commercially reasonable manner and, at the option of Lender, in bulk or in individual units or both and with or without having the Collateral at the sale or other disposition, all free and clear of any claims or rights of Borrower and Borrower agrees that in case of sale or other disposition of the Collateral described above, or any portion thereof, Lender shall apply all proceeds first to all costs and expenses of disposition, including reasonable attorneys' fees and court costs and expenses, and then to Borrower's Obligations to Lender, and Borrower acknowledges and agrees that in any action or proceeding brought by Lender to obtain possession of any Collateral, Lender shall be entitled to issuance of a writ or order of possession (or similar legal process) without the necessity of posting a bond, security or other undertaking which is hereby waived by Borrower. If Borrower contests Lender's right to possession of any Collateral in any action or proceeding, Borrower shall post a bond (issued by a national insurer authorized to issue such bonds in the jurisdiction of such action or proceeding) in an amount equal to twice the amount in controversy in such action or proceeding or twice the amount of Borrower's unpaid Obligations to Lender, whichever is less. Borrower agrees that upon the request of Lender, after any default, to segregate and hold all or any part of the Collateral in a fiduciary capacity and to adequately maintain, service and insure said property and to protect same from use and/or abuse, all without charge to Lender, such fiduciary duty to terminate only upon the actual delivery of the Collateral to Lender. Lender may require Borrower to i) pay all accrued interest, late charges, collection charges, the default rate of interest, reimbursement for any and all costs and expenses incurred by Lender in enforcing any of the Obligations or this agreement and any reasonable attorneys' fees, ii) deliver any or all of the Collateral at Borrower's expense to such place or places as Lender may designate. No failure or delay on the part of Lender to exercise any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right or remedy. Lender does not waive any right and/or remedy not exercised and retains all rights and remedies subject to applicable law. The exercise or partial exercise of any remedy shall not be construed as a waiver of any other remedy nor constitute an election of remedies. The provisions of this Agreement and the rights and remedies granted to Lender herein shall be in addition to, and not in limitation of, those of any other agreement with Lender, the Code or any other evidence of any obligations held by Lender.

15. **Default Rate of Interest**. Upon the occurrence of an Event of Default any amounts due and to become due hereunder shall, without notice, bear interest, from the date such amounts are due until paid, at a rate (referred to as the "Default Rate or Delinquent Interest") which is the lesser of: (a) the maximum rate per annum which Lender is permitted by law to charge, or (b) eighteen percent (18%) per annum.

16. **Disposition; Expenses.** Borrower shall pay all reasonable expenses of Lender in obtaining possession, the disposition of and realizing upon the Collateral and collecting all liabilities of Borrower to Lender, including but not limited to any collection agency fee. In any interpretation or enforcement of the Agreement or any dispute related thereto or to the relationship between the parties, Borrower shall pay Lender's legal expenses and reasonable attorneys' fees, including any incurred before and at trial, on appeal, in any other proceeding or without any litigation being filed. Any notification of a sale or other disposition of the Collateral or of other action by Lender required to be given by Lender, will be sufficient and deemed commercially reasonable if given personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days prior to the day on which such sale or other disposition will be made or action taken. In the event Lender sells all or part of the Collateral at public or private sale: (i) Lender shall not be required to refurbish, repair or otherwise incur any expenses in preparing the Collateral for sale but may sell its interest therein on an "AS-IS," "WHERE-IS" basis, if allowed by applicable law, and whether or not the items sold are in Lender's possession and present at the time and place of sale; (ii) Lender may, but shall not be obligated to, bid, credit bid or become the purchaser at any such sale, may or may not set any minimum bid, and may sell the Collateral in individual units or in bulk, including all of the Collateral sold in one lot as a whole; (iii) Borrower waives any and all rights of redemption from any such sale; (iv) Any public sale will be deemed commercially reasonable if notice thereof is provided to Borrower personally or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before such sale, and sent to the address indicated above, and advertised in at least one newspaper of general circulation in the area of the sale (available on the newspaper's website in electronic format or in print) at least twice prior to the date of sale (and in the event there is no newspaper of general circulation, other electronic means to publicly notice the sale) and if upon terms of ten percent (10%) cash down with the balance payable in good funds within twenty-four (24) hours after the sale or such other more favorable terms as may be agreed to by Lender; (v) Any private sale shall be deemed commercially reasonable if notice thereof shall be provided to Borrower personally, or by US Postal Service regular mail, or delivered by facsimile transmission or overnight carrier or emailed (if legally permissible) at least ten (10) days before the sale date stated therein sent to the address indicated above; (vi) The proceeds of any public or private sale shall be applied first to pay all costs, expenses and charges including but not limited to searching, locating, taking, removing, repossessing, keeping, advertising, marketing and selling the Collateral, reasonable attorneys'

125

fees, costs and expenses, court costs, bond and insurance premiums, advertising, postage and publishing costs, and sales commissions, and second to the payment, partly or entirely, of any of the Obligations in any manner as Lender may in its sole discretion elect, returning any excess to Borrower, if any, or such other party in interest as may be required by law. Notwithstanding the foregoing, the Borrower shall remain liable to Lender for any deficiency due and owing after application of the proceeds described above, plus late charges and Delinquent Interest and other amounts as provided herein. No action taken by Lender shall release Borrower from any of the Obligations or its obligations to Lender. Failure of Lender to comply with the terms listed in this paragraph shall not render any sale invalid or commercially unreasonable. Lender may without prior notice to or demand upon Borrower and with or without the exercise of any of Lender's other rights or remedies, apply toward the payment of Borrower's Obligations (at any time owing to Lender) any checks, drafts, agreements, balances, reserves, accounts and sums belonging to or owing to Borrower and coming into Lender's possession and for such purpose may endorse Borrower's name on any instrument or document payable to Borrower (whether for deposit, collection, discount or negotiation). Without notice to Borrower, Lender may make such applications or change applications of sums previously paid and/or to be paid to Lender, to such Obligations as Lender in its sole discretion may choose.

17. **Protection of the Collateral.**  At its option and in its sole discretion, Lender may discharge taxes, liens or other encumbrances at any time levied or placed on the Collateral, and may pay for insurance and maintenance and preservation of the Collateral. Borrower agrees to reimburse Lender on demand for any payment made or any expense incurred by Lender pursuant to the foregoing authorization and to pay a fee for additional monitoring incurred by Lender for Borrower's failure to maintain coverage or protection as provided herein. Any payments made by Lender shall be immediately due and payable by Borrower and shall bear interest at the Default Rate. Should Borrower fail to pay taxes or repairs relating to the Collateral or to maintain or obtain insurance, Lender shall have the right, but not the obligation, and without releasing Borrower from any obligation hereunder, to pay any sum due in connection therewith or to contest or compromise any encumbrance, charge, tax or lien and in exercising any such rights, incur any liability and expend whatever amounts in its absolute discretion it may deem necessary. If Lender shall pay for any of the foregoing, Borrower shall promptly reimburse Lender therefore on demand together with interest thereon at the Default Rate.

18. **Additional Security, Right to Set-off.**  Lender may proceed against and/or enforce any of its rights with respect to the Collateral in whatever order it may, in its sole discretion, deem appropriate. Any amount(s) received by Lender from whatever source may be applied by Lender to any of the Obligations and may be applied in such order of application, as Lender shall from time to time, in its sole discretion, elect. To the extent permitted by applicable law, Lender reserves a right of set-off in all of Borrower's accounts and deposit accounts with Lender (whether checking, savings, money market or some other account). This includes all accounts and deposit accounts Borrower holds jointly with someone else and all accounts and deposit accounts Borrower may open in the future. However, this does not include any IRA, Keogh accounts, or any trust account(s) whereupon set-off would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or set-off all sums owing on the indebtedness against any and all such accounts and/or deposit accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and set-off rights provided in this paragraph.

19. **Assignment.** All covenants and agreements contained by or on behalf of Borrower or any Guarantor in this Agreement shall bind its successors and assigns or the heirs and personal representatives of any individual guarantor and shall inure to the benefit of Lender and its successors and assigns. Lender may sell or assign any and all right, title and interest it has under this Agreement and in the Collateral, in whole or in part. Borrower shall, upon the direction of Lender: (a) execute all documents necessary to effectuate such assignment, and (b) pay directly and promptly to Lender's assignee, without abatement, deduction, offset, set-off, defenses, claims, counterclaims, or causes of action, all amounts which have become due under the assigned agreements. Lender's assignee shall have any and all rights, immunities and discretion of Lender hereunder and shall be entitled to exercise any remedies of Lender hereunder. All references herein to Lender shall include Lender's assignee (except that said assignee shall not be chargeable with any obligations or liabilities hereunder or in respect hereof). Borrower shall not assert against Lender's assignee any abatement, deduction, offset, defense, claim, counterclaim, causes of action or set-off which Borrower may assert it has against Lender. Borrower shall not assign or in any way dispose of all or any of its rights or obligations under this Agreement or enter into any agreement regarding all or any part of the Collateral without the prior written consent of Lender which may be withheld or denied, in its sole and absolute discretion, and any such purported assignment without the prior written consent of Lender by Borrower shall be null and void ab initio. In connection with the granting of such consent and the preparation of necessary documentation, a fee, determined by Lender in its sole and absolute discretion, shall be assessed. In the event that Lender has consented in writing, in its sole or absolute discretion, to any lease or license of the Collateral or any part thereof, Borrower hereby assigns and grants to Lender a

Page **9** of **13**

security interest in any and all rights under any lease(s) or license(s), to secure all Obligations to Lender, and Borrower shall deliver to Lender the original of such lease(s).

20. **Entire Agreement**. THIS AGREEMENT AND ALL OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH REPRESENTS AND EMBODIES THE FINAL AND ENTIRE AGREEMENT BETWEEN THE PARTIES AND SUPERSEDES ALL PRIOR AGREEMENTS AND UNDERSTANDINGS RELATING TO THE SAME SUBJECT MATTER HEREIN AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES. Borrower acknowledges that no promises of any kind have been made by Lender or any third party to induce Borrower to execute this Agreement except to the extent expressly contained herein. Upon request, the parties will promptly execute and deliver such other and further documents and instruments, and shall do or take such other actions as may be reasonably required or appropriate, to cure any defects in the creation and issuance of this Agreement or in the perfection or preservation of the security interests contemplated herein.

21. **Amendment and Waiver.** No termination, waiver, amendment or modification of any of the terms or provisions of this Agreement or any obligation of Borrower to Lender shall be valid or binding unless set forth in a writing signed by a duly authorized officer of Lender, and then only to the extent specifically set forth therein. The waiver by Lender of any default hereunder or of any provisions hereof shall not discharge any party hereto from liability hereunder and such waiver shall be limited to the particular Event of Default and shall not operate as a waiver of any other or subsequent default.

22. **Attorneys' Fees; Expenses**. Borrower agrees to reimburse Lender on demand for the actual amount of all costs and expenses, including reasonable attorneys' fees, fees of auditors and accountants, and investigation expenses, UCC and tax lien searches, credit investigation fees, which Lender may incur in: (a) preparing, negotiating, closing, funding, amending, interpreting, administering and/or enforcing this Agreement and any documents prepared in connection herewith; (b) protecting, preserving or enforcing any lien, security interest or other right granted by Borrower to Lender or arising under applicable law, whether or not suit is brought; (c) in defense of Lender's interest or ownership rights in the Collateral including its priority; (d) in connection with any federal or state insolvency proceeding commenced by or against Borrower, or any subpoena or other legal process in any way relating to Borrower, including but not limited to those arising out of the automatic stay or seeking relief thereof, seeking dismissal or conversion of the bankruptcy proceeding or opposing confirmation of Borrower's plan thereunder. This provision shall survive termination of this Agreement. Notwithstanding the existence of any law, statute, rule or otherwise, in any jurisdiction which may provide Borrower with a right to attorneys' fees or costs, Borrower hereby waives any and all rights to seek such attorneys' fees or costs and Borrower agrees that Lender exclusively shall be entitled to indemnification and recovery of any and all reasonable attorneys' fees or costs in respect to any litigation based hereon, arising out of, or related hereto, whether under, or in connection with, this and/or any agreement executed in conjunction herewith, or any course of conduct, course of dealing, statements (whether verbal or written) or actions of either party.

23. **Choice of Law; Venue and Jurisdiction**. INTENDING THAT EACH AND EVERY PROVISION OF THIS AGREEMENT BE FULLY EFFECTIVE AND ENFORCEABLE ACCORDING TO ITS TERMS, THE PARTIES AGREE THAT ANY CLAIM, CONTROVERSY, DISPUTE, THE VALIDITY, ENFORCEABILITY AND EFFECTIVENESS OF EACH PROVISION HEREOF AND THE OBLIGATIONS OF THE BORROWER, AND THE RIGHTS AND REMEDIES OF THE LENDER IN ANY WAY RELATED TO OR ARISING UNDER THIS AGREEMENT OR UNDER ONE OR MORE OBLIGATIONS OF BORROWER TO LENDER AND THE RELATIONSHIP OF THE PARTIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO THE CONFLICTS OF LAWS PRINCIPLES OR PROVISIONS THEREIN EXCEPT TO THE EXTENT THAT THE FEDERAL LAWS OF THE UNITED STATES OF AMERICA OTHERWISE PREEMPT TEXAS LAW, IN WHICH EVENT FEDERAL LAW SHALL CONTROL. BORROWER HEREBY IRREVOCABLY CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS OF THE STATE OF TEXAS IN CONNECTION WITH ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THE AGREEMENT OR THE OBLIGATIONS OR THE TRANSACTION CONTEMPLATED HEREBY. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if Lender so elects, be instituted in any State or Federal Court sitting in Dallas County, Texas or, if none, any court sitting in the State of Texas (the "Acceptable Forums"). Borrower agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction and/or based upon venue or "forum non conveniens" in connection with any such action or proceeding. Should

Copyright 2015

Triumph LSA 1 Balloon 601004 v02.00

127

such proceeding be initiated in any other forum, Borrower waives any right to oppose any motion or application made by Lender to transfer such proceeding to an Acceptable Forum.

24. **Counterparts**. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if all signatures were upon the same instrument. Delivery of an executed counterpart by electronic transmission shall be effective as delivery of a manually executed counterpart, and any party delivering such an executed counterpart shall thereafter also promptly deliver a manually executed counterpart, provided that the failure to deliver such manually executed counterpart shall not affect the validity, enforceability, or binding effect of this Agreement.

25. **Notice.** All communications under or in connection with this Agreement (other than notices of public or private sale, which have notice provisions described in this Agreement) shall be in writing and personally delivered to an officer of the receiving party and/or shall be mailed by registered or certified mail, return receipt requested, postage prepaid, to the addresses of the parties listed in this Agreement or to such other addresses as each party may in writing hereafter indicate in compliance with this Agreement. Any notice so addressed and mailed by registered or certified mail, return receipt requested, shall be deemed to be given to Borrower when so mailed and to Lender upon actual receipt by an authorized officer of Lender, and any notice so delivered in person shall be deemed to be given when actually received by, or receipt therefor is given by, an authorized officer of Borrower or Lender, as the case may be.

26. **DTPA Waiver**. Borrower acknowledges and agrees that Borrower has the knowledge and experience in financial and business matters to evaluate the merits and risks of the business transaction contemplated herein, is not in a disparate bargaining position relative to negotiating this Agreement and willingly waives and releases, without limitation, all rights and remedies associated with the Texas Deceptive Trade Practices Act ("DTPA") or such similar statute.

27. **Invalidity and Statute of Limitations**. In the event that any one or more of the provisions contained in this Agreement is/are in conflict with any statute, judicial decision or law and thus not valid or enforceable or is held, rendered or declared invalid, illegal or unenforceable in any respect by any existing or subsequently enacted legislation or decision of a court of competent jurisdiction, such legislation or decision regarding the invalidity, illegality or unenforceability shall not affect, impair, invalidate or nullify the remainder of this Agreement or any other provision of this Agreement which shall remain in full force and effect. Borrower unconditionally and irrevocably stipulates and agrees that Borrower shall have no right to assert any claim, cause of action or counter claim, or to commence any action or proceeding against Lender as a result of, arising out of, or in any way related to the Agreement or the Collateral for the lesser of two years and one day after such claim, counter claim or cause of action shall accrue or any applicable statute of limitations. In no event shall the foregoing provision be read or interpreted to increase or lengthen any applicable statute of limitations.

28. **Survival of Agreements**. All representations and warranties of Borrower herein, and all covenants and agreements herein not fully performed before the effective date of this Agreement, shall survive such date.

29. **Renewal or Extension**. All provisions of this Agreement relating to the Obligations shall apply with equal force and effect to each, and to all documents and instruments hereinafter executed which in whole or in part represent a renewal, extension, increase, rewrite or rearrangement of any part of the Obligations. Any provision of this Agreement to be performed during the "term of this Agreement" "term hereof" or similar language, shall include any extension period. The loan documents exclusively represent the agreements between the parties and the intent of the parties thereto and supersede any prior proposal letters, commitment letters, oral covenants, oral agreements or negotiations.

30. **Cumulative Rights**. The rights and remedies of Lender under this Agreement shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

31. **Negotiation of Documents**. This Agreement has been negotiated by the parties at arm's length, each party represented by its own counsel, or waiving the right to be represented by counsel, and the fact that the documents have been prepared by Lender's counsel, after such negotiation, shall not be cause to construe any of such documents against Lender. Borrower acknowledges and agrees that this Agreement was deemed negotiated, approved, accepted and funded in Dallas, Texas. The Borrower has been advised and represents that it understands (i) that the Lender is a state savings bank in the State of Texas with its principal place of business in Dallas County, TX, (ii) that Lender negotiated, documented, closed and funded this Agreement in Dallas County, TX, (iii) that the documents will be maintained and stored in Dallas County, TX. The parties agree that any copy of this executed Agreement, including any photocopy, telecopy, electronic copy or facsimile thereof,

Triumph LSA 1 Balloon 601004 v02.00

Copyright 2015

128

shall have the same force and effect as though it were an original for all purposes, including but not limited to the enforcement of any of the terms and conditions thereof and the admissibility of such loan document in any legal or equitable proceeding.

**32. Debtor-Creditor Relationship.**  None of the terms of this Agreement or of any other document executed in conjunction herewith or related hereto shall be deemed to give Lender the rights or powers to exercise control over the business or affairs of Borrower. The relationship between Borrower and Lender created by this Agreement is only that of debtor/creditor.

**33. Indemnification.**  Borrower assumes liability for and agrees to defend, indemnify, protect, save and hold harmless Lender and its affiliates and their respective officers, directors, employees, agents, attorneys and advisors (each, an "Indemnified Party") from and against any and all claims, damages, losses, liabilities, disbursements, costs and expenses, including, without limitation, reasonable attorneys' fees, court costs and expenses that may be incurred by or asserted or awarded against any Indemnified Party; i) arising out of or related to the Obligations, or the manufacture, financing, ownership, delivery, possession, use, operation, condition, or disposition of the Equipment by Borrower, including without limitation, any claim alleging latent and other defects, whether or not discoverable by Lender or Borrower and any other claim arising out of strict liability in tort, whether or not in either instance relating to an event occurring while Borrower remains obligated under this Agreement, and any claim for patent, trademark or copyright infringement, and/or ii) arising out of or related to any challenge to the nature or priority of Lender's security interest in/to the Collateral, except to the extent such claim, damage, loss, liability, cost or expenses is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's gross negligence or willful misconduct. In the case of an investigation, litigation or other proceeding to which the indemnity in this section applies, such indemnity shall be effective without prejudice to the survival of any other agreement of Borrower hereunder, and the agreements and obligations of Borrower contained in this section shall survive the payment in full of the indebtedness and all other amounts payable under this Agreement. To the maximum extent permitted by law, Borrower hereby knowingly, voluntarily and intentionally (and after each has consulted with its own attorney) irrevocably and unconditionally agrees that no claim may be made by Borrower against any Indemnified Party for any special, indirect, consequential or punitive damages in respect of any breach or wrongful conduct (whether the claim is based on contract, tort, common law or statute) arising out of, or related to, the transactions contemplated by this Agreement or any other Obligation or related documents, or any act, omission, or event occurring in connection herewith or therewith. In furtherance of the foregoing, Borrower hereby waives, releases and shall indemnify and hold harmless any and all Indemnified Parties from any such claims.

**34. Waiver of Trial by Jury.**  EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY FROM OR RELATING TO THEIR RELATIONSHIP, ANY CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM (a) ARISING UNDER THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (b) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER OBLIGATION, INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT.  IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE, EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, CAUSE OF ACTION AND/OR COUNTERCLAIM SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

**35. Reversal of Payments.**  Lender shall have the continuing and exclusive right to apply, reverse and re-apply any and all payments to any portion of the Obligations in a manner consistent with the terms of this Agreement. To the extent Borrower makes a payment or payments to Lender, or Lender receives any payment or proceeds of any collateral for Borrower's benefit, which payment(s) or proceed(s) or any part thereof are subsequently invalidated, declared to be fraudulent or preferential, set aside and/or required to be repaid to a trustee, receiver or any other party under any bankruptcy law, state or

Page 12 of 13

Copyright 2015

129

federal law, common law or equitable cause, then, to the extent of such payment or proceeds received, the Obligations or party thereof intended to be satisfied shall be revived and continued in full force and effect, as if such payment or proceeds had not been received by Lender.

36. **Injunctive Relief**. Borrower recognizes that, in the event Borrower fails to perform, observe or discharge any of its obligations or liabilities under this Agreement, any remedy at law may prove to be inadequate relief to Lender, therefore, Borrower agrees that if any default or Event of Default shall have occurred and be continuing, Lender shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages and without the posting of bond or other security in connection with such injunctive relief.

37. **Time of the Essence**. Time is of the essence with respect to the payment and performance of Borrower's obligations under this Agreement and any other agreement between Borrower and Lender.

38. **Use of Headings**. The headings used in each section of this Agreement are for ease of reference only. Such headings are not intended to serve any descriptive, explanatory or other purpose and are of no legal or other significance whatsoever. The terms "this Agreement," or "hereof," or "herein," or "hereunder," and any similar expressions refer to this Agreement and not to any particular paragraph or section or portion hereof. Lender and Borrower shall collectively be referred to herein as the "parties," and each individually as a "party."

IN WITNESS WHEREOF, the parties have executed this Agreement on the Execution Date.

**LENDER:**

TBK BANK, SSB

By: _____

Name: _____

Title: _____

**BORROWER:**

**RDX INC.,**
**a CALIFORNIA CORPORATION**

By: _____

Name: NAVDEEP KAUR SINGH

Title: CEO/PRESIDENT

Page **13** of **13**

## SCHEDULE "A"

This schedule is attached to and becomes part of that certain LOAN AND SECURITY AGREEMENT dated ___JUNE 24, 2016 (hereinafter referred to as the "Agreement") between the undersigned parties listed below, the Borrower and TBK BANK, SSB, as Lender

### DESCRIPTION OF PROPERTY

| Year | Manufacturer | Model and Specifications | Serial Number |
|------|--------------|--------------------------|---------------|
| 2016 | FREIGHTLINER | CASCADIA 125SLP TRACTOR WITH APU UNIT S/N 43899830 | 3AKJGLD55GSHA1841 |
| 2016 | FREIGHTLINER | CASCADIA 125SLP TRACTOR WITH APU UNIT S/N 43798469 | 3AKJGLD57GSHA1842 |
| 2016 | FREIGHTLINER | CASCADIA 125SLP TRACTOR WITH APU UNIT S/N 43899831 | 3AKJGLD59GSHA1843 |
| 2016 | FREIGHTLINER | CASCADIA 125SLP TRACTOR WITH APU UNIT S/N 44099440 | 3AKJGLD50GSHA1844 |
| 2016 | FREIGHTLINER | CASCADIA 125SLP TRACTOR WITH APU UNIT S/N 43898726 | 3AKJGLD52GSHA1845 |

and any and all additions, attachments, accessories, substitutions, replacements, replacement parts, software and software upgrades, and all cash and non cash proceeds including without limitation, any rental proceeds, insurance proceeds, accounts, accounts receivable, chattel paper and electronic chattel paper arising out of or related to the use, sale, lease, rental or other disposition thereof.  The Borrower hereby consents and agrees that all of the terms, provisions and obligations contained in the Agreement are in full force and effect and are hereby ratified and confirmed.

**LENDER:**

TBK BANK, SSB

By: _____

Name: _____

Title: _____

**BORROWER:**

RDX INC.

By: _____

Name: NAVDEEP KAUR SINGH

Title: CEO/PRESIDENT

## ACKNOWLEDGEMENT OF DELIVERY/INSTALLATION

| 2436 S SARAH STREET | FRESNO | CA | JUNE 24, 2016 |
|---|---|---|---|
| Address | City | State | Date |

To:  TBK BANK, SSB (hereinafter referred to as "TRIUMPH")

Re:  LOAN AND SECURITY AGREEMENT dated **JUNE 24, 2016** (hereinafter referred to as the "Agreement") between TRIUMPH, as Lender and the undersigned, as Borrower (hereinafter referred to as "Borrower").

1. Borrower hereby acknowledges the complete and satisfactory delivery, installation and acceptance of the property described in the Agreement and/or any Schedule to the Agreement ("Property").

2. **TRIUMPH MAKES NO WARRANTIES OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE OR OF ANY KIND REGARDING THE PROPERTY DESCRIBED IN THE AGREEMENT AND/OR SCHEDULE, WHETHER EXPRESS, IMPLIED OR STATUTORY. BORROWER CONSENTS AND AGREES THAT ANY AND ALL WARRANTEES ARE EXPRESSLY DISCLAIMED BY TRIUMPH.** Borrower further understands that (if the Agreement evidences a sale or lease of the Property to Borrower) all warranties, if any, made by any manufacturer(s), supplier(s) or seller(s) of the Property (none of which are made by Triumph) are made directly to Borrower, or if applicable, if any warranties are made to Triumph, Triumph will permit Borrower to assert any warranty claims directly against the manufacturer, supplier or seller, but not against Triumph. Borrower understands that any recourse it may have is limited to the manufacture(s), supplier(s) or seller(s) or to such other party that may have made any warranty, but not against Triumph.

3. Borrower consents and agrees to look solely to the manufacturer(s), seller(s) or supplier(s) of the Property (other than Triumph) for any servicing or warranty claims or work, if any, or to some other qualified service organization, for any servicing or warranty claims or work. Borrower fully understands and agrees that any defect in, deficiency of or failure of any Property or of any service or delay, of any nature whatsoever, is not and shall not be grounds for any defense, offset, abatement, set-off, claim, counterclaim, cause of action, delay or reduction of any of Borrower's obligations to Triumph and shall not be an excuse for any non-fulfillment, delay or reduction of Borrower's obligations to Triumph under the Agreement. Borrower acknowledges and agrees that TRIUMPH does not service the Property and provides no services of any kind with respect to the Property.

4. In transactions where TRIUMPH is not the original Holder of the Agreement, Borrower further acknowledges, represents and warrants to TRIUMPH that the Agreement is free from any abatements, claims, defenses, causes of action, set-offs, offsets or counterclaims and that TRIUMPH has the right to enforce the Agreement according to its terms. This representation is made to induce TRIUMPH to purchase and accept an assignment of the Agreement.

5. Borrower hereby represents and acknowledges that it has the knowledge, ability, experience and capacity to evaluate the risks of the transaction evidenced by the Agreement as well as how to operate and maintain the Property in accordance with any manufacturers, suppliers or sellers recommendations. Borrower represents and warrants that it will operate and maintain the Property in accordance with the Agreement and any and all manufacturers, suppliers and /or sellers recommendations and requirements.

6. All of the terms and provisions in the Agreement are enforceable and are hereby ratified and confirmed and Borrower fully recognizes Triumph's right to enforce the Agreement according to its terms.

**(DO NOT SIGN THIS FORM UNTIL THE PROPERTY IS DELIVERED AND ACCEPTED)**

WITNESS:

_____
Name:

**BORROWER:**

RDX INC.

By: _____

Name: <u>NAVDEEP KAUR SINGH</u>

Title: <u>CEO/PRESIDENT</u>

**RDX INC.**
**2436 S SARAH STREET**
**FRESNO, CA 93706**

JUNE 24, 2016

TBK Bank, SSB
12700 Park Central Drive, Suite 1700
Dallas, TX 75251

Re:    LOAN AND SECURITY AGREEMENT in the amount of **$695,750.00** dated **JUNE 24, 2016** between **RDX INC.** as Borrower and TBK Bank, SSB as Lender.

Gentlemen:

Please accept this letter as our unconditional, irrevocable authorization and request for you to disburse the proceeds due us from the above referenced agreement as follows:

| | | |
|---|---|---|
| $695,000.00 | To | TIGER TRANS INC<br>4021 PERSIMMON RD<br>TURLOCK, CA 95382 |
| $750.00 | To | TBK Bank, SSB<br>DOCUMENTATION FEE |

Payment as outlined above will in all respects be the equivalent of payment made directly to us and represents the entire amount due us. You shall not be obligated to see to the application thereof by the recipient. We hereby indemnify and release you from any liability of any nature or kind, whatsoever, known or unknown, arising from or related to the disbursement of loan proceeds or the payments authorized in this letter.

Sincerely,

**RDX INC.**

By: _Navdeep Kaur Singh_

Name: NAVDEEP KAUR SINGH

Title: CEO/PRESIDENT

133

Exhibit 6

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

61417060729

| COMMERCIAL | TITLE ONLY | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| **VEHICLE ID NUMBER** | | | | |

3AKJGLD55GSHA1841     2016 FRHT     4QCP244

| BODY TYPE MODEL | AX | WEIGHT | FUEL | TRANSFER DATE | FEES PAID | EXPIRATION DATE |
| | UNLADEN | | | | | |

DS     2 15500 D   06/24/16    $30     10/31/2015

| | SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
2015 MA 2016 YT        06/07/17

MOTORCYCLE ENGINE NUMBER       ODOMETER DATE    ODOMETER READING

**REGISTERED OWNER(S)**

RDX INC
2436 S SARAH ST
FRESNO CA 93706

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a _____ X _____
     DATE                     SIGNATURE OF REGISTERED OWNER

1b _____ X _____
     DATE                      SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ _ _ _ , _ _ _ ] (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING ☐ Odometer reading is **not** the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

**LIENHOLDER(S)**

TBK BANK SSB
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

CA173982150

028648     REG. 17.30RS (REV.02/2014)

**KEEP IN A SAFE PLACE - VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW     VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

135



## STATE OF CALIFORNIA

### CERTIFICATE OF TITLE

61417060729

VEHICLE HISTORY

**COMMERCIAL**    **TITLE ONLY**

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| 3AKJGLD57GSHA1842 | | 2016 | FRHT | 3QSK227 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| DS | | 3,15500 | D | 06/24/16 | $30 | 10/31/2015 |

| | YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | 2015 | MA | 2016 | YT | | 06/07/17 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
|---|---|---|

REGISTERED OWNER(S)

RDX INC
2436 S SARAH ST
FRESNO CA 93706

—————
—————

I certify (or declare) under penalty of perjury under the laws of the State of California that THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.

1a. _____ X _____
     DATE      SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
     DATE      SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads [ ][ ][ ],[ ][ ][ ]. (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEROR/OWNER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2 X _____
Signature releases interest in vehicle. (Company names must be countersigned)
Release Date _____

CA173982149

028647

REG. 17 30RS (REV 02/2014)

KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK, HOLD TO LIGHT TO VIEW (left and right margins)

136

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

61417060729

VEHICLE HISTORY

**COMMERCIAL**    **TITLE ONLY**

| VEHICLE ID NUMBER | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|
| 3AKJGLD50GSHA1844 | 2016 | FRHT | 40CP247 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| DS | 3 | 15500 | D | 06/24/16 | $30 | 10/31/2015 |

| | YR (S) SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | 2015 | MA | 2016 | YT | | 06/07/17 |

| MOTORCYCLE ENGINE NUMBER | ODOMETER DATE | ODOMETER READING |
|---|---|---|

REGISTERED OWNER(S)

RDX INC
2436 S SARAH ST
FRESNO CA 93706

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a _____ X _____
   DATE           SIGNATURE OF REGISTERED OWNER

1b _____ X _____
   DATE           SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|__|__|__| (no tenths) miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

WARNING ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT (SIGNING FOR A COMPANY) | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X _____
   Signature releases interest in vehicle. (Company names must be countersigned)
   Release Date

CA173982153

028651    REG. 17.30RS (REV 02/2016)

## KEEP IN A SAFE PLACE - VOID IF ALTERED

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

138

# STATE OF CALIFORNIA

## CERTIFICATE OF TITLE

VEHICLE HISTORY

61417060729

**COMMERCIAL**     **TITLE ONLY**

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| 3AKJGLD52GSHA1845 | 2016 | FRHT | 48CP24B | |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| DS | 3 | 15500 | D | 06/24/16 | $30 | 10/31/2015 |

| | YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | 2015 | MA | 2016 | YT | | 06/07/17 |

MOTORCYCLE ENGINE NUMBER          ODOMETER DATE          ODOMETER READING

REGISTERED OWNER(S)

RDX INC
2436 S SARAH ST
FRESNO CA 93706

- - - - -

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a. _____ X _____
    DATE          SIGNATURE OF REGISTERED OWNER

1b. _____ X _____
    DATE          SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |__|__|__|__|__|__| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING** ☐ Odometer reading is not the actual mileage. ☐ Mileage exceeds the odometer mechanical limits.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |

PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY          PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY

### IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

TBK BANK SSB
12700 PARK CENTRAL DR
STE 1700
DALLAS
TX 75251

2. X _____
Signature releases interest in vehicle. (Company names must be countersigned)

Release Date _____

028649          CA173982151

REG 17 39RS (REV 02/2016)

**KEEP IN A SAFE PLACE · VOID IF ALTERED**

VOID WITHOUT BEAR WATERMARK. HOLD TO LIGHT TO VIEW

139

# Exhibit 7

**Fill in this information to identify the case:**

Debtor name     **RDX, INC.**

United States Bankruptcy Court for the:     EASTERN DISTRICT OF CALIFORNIA

Case number (if known)

☐ Check if this is an
amended filing

## Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property                    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest.
Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties
which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts
or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write
the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an
additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset
schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the
debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

**1. Does the debtor have any cash or cash equivalents?**

    ☐ No.  Go to Part 2.
    ☑ Yes Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|
| All cash or cash equivalents owned or controlled by the debtor | | |
| 2. | Cash on hand | $10.00 |

**3.** Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| **4 Checking Accounts with Wells Fargo** **All accounts have a negative balance -** **Last 4 Digits are as follows:** **XXXXXX2791** **XXXXXX2841** **XXXXXX2817** | | | |
| 3.1.  **XXXXXX2833** | Checking | | $0.00 |

**4.** Other cash equivalents *(Identify all)*

**5.** Total of Part 1.                                                                                    | $10.00 |

    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| Part 2: | Deposits and Prepayments |
|---|---|

**6. Does the debtor have any deposits or prepayments?**

    ☑ No.  Go to Part 3.
    ☐ Yes Fill in the information below.

| Part 3: | Accounts receivable |
|---|---|

**10. Does the debtor have any accounts receivable?**

    ☐ No.  Go to Part 4.
    ☑ Yes Fill in the information below.

Official Form 206A/B                    Schedule A/B Assets - Real and Personal Property                    page 1

141

| Debtor | RDX, INC. | Case number *(if known)* |
|---|---|---|
|  | Name |  |

**11.** **Accounts receivable**

11a. 90 days old or less: **1,548.00** - **0.00** = .... **$1,548.00**
face amount          doubtful or uncollectible accounts

11a. 90 days old or less: **350.00** - **0.00** = .... **$350.00**
face amount          doubtful or uncollectible accounts

11a. 90 days old or less: **1,223.00** - **0.00** = .... **$1,223.00**
face amount          doubtful or uncollectible accounts

**12.** **Total of Part 3.**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.

| | **$3,121.00** |
|---|---|

**Part 4:** **Investments**

**13. Does the debtor own any investments?**

■ No. Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:** **Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

**Part 6:** **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:** **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39.** Office furniture **Table, Desk, 2 Chairs, Misc Office Furniture** | **$0.00** | | **$500.00** |
| **40.** Office fixtures | | | |
| **41.** Office equipment, including all computer equipment and communication systems equipment and software **1 Computer and 1 printer** | **$0.00** | | **$250.00** |

Official Form 206A/B          Schedule A/B Assets - Real and Personal Property          page 2

142